SAMUEL DITTO, APPELLANT, V. INTERNATIONAL HARVESTER
COMPANY, APPELLEE.

FILED JANUARY 19, 1921.· No. 21148.

1. Sales: WARRANTY: NOTICE OF BREACH: WAIVER. "The fact that
notice of failure of a machine to fulfil the requirements of a
printed warranty is not given in the manner provided by the
contract is no defense against an alleged breach of warranty
where the vendor under such notice as is given him by the vendee
undertakes to remedy the defects complained of by the latter."
*Advance Thresher Co. v. Vin· kel*, 84 Neb. 429.

2. ———: CONTRACT: WAIVER. "Where· a contract for the sale of a
machine provides that a retention thereof by the vendee beyond
a given period will operate as a waiver of defects, *held* to be
inapplicable where the vendor induced the vendee to retain the
machine under a promise that the defects would be remedied."
*Advance Thresher Co. v. Vinckel*, 84 Neb. 429.

APPEAL from the district court for Douglas county:
ARTHUR C. WAKELEY, JUDGE. *Reversed.*

*P. A. Wells* and *John G. Kuhn,* for appellant.

*Arthur F. Mullen* and *David A. Orebaugh,* contra.

DEAN, J.

Plaintiff sued to recover damages from defendant that
he alleged· arose out of the fraudulent sale to him by de-
fendant's agents of a defective stationary engine that was
intended to be used for pumping water for irrigation pur-
poses on plaintiff's farm near Gillette, Wyoming. At the
close of the testimony, when both parties had rested, the
court directed a verdict against plaintiff and in favor of
defendant for $1,305 on its cross-petition for an alleged
remainder of the unpaid purchase price. The plaintiff
appealed from a judgment on the verdict.

Plaintiff alleged generally that in April,. 1913, he was
induced by the false and fraudulent representations of
defendant's agents to purchase the defective engine in

question; that he explained in detail to defendant, through its agents, the use to which the engine was to be put, and also described the engine then in use and the pump that was to be operated; that he informed them of the acreage to be irrigated, the kind of soil, the kind of crops to be raised, the amount of water necessary, and the height to which it must be raised to irrigate the land. He alleged that he was a farmer and had no knowledge of machinery and engines, "especially of the type and kind of engine" in question, which defendant's agents well knew; that defendant, knowing well the use to which plaintiff intended to put the engine, falsely and fraudulently represented to plaintiff and warranted that its giant model 50-horse power 1913 type engine was of sufficient capacity and power to do the required work; that plaintiff relied on the representations and warranties so made and in reliance thereon was thereby induced to purchase the engine; that he hauled it to his farm and with the assistance and under the supervision of E. A. Thorsen, one of defendant's agents, it was attached to the pump; that Thorsen started the engine, but it failed to operate the pump and was unfit to do the work for which it was intended and which the agents falsely and fraudulently represented and warranted that it would do; that he insisted that defendant take the engine back and return the consideration; that Thorsen refused to do so, and in order to induce plaintiff to keep the engine falsely represented that a larger pulley wheel, which he attached to the engine, would remedy the defect; that it failed to do so and the engine failed to pump the amount of water required by defendant's warranty; that defendant again refused, on plaintiff's demand, to take the engine and return the consideration, but he assured plaintiff that "it would work all right after 'it got well limbered up,'" that he made complaint at the general office of defendant at Chicago and expert mechanics were sent from there to his farm, and they all failed, after considerable effort, to remedy the defect or to cause the engine to do the work for which it was intended; that

the engine has never done "the work as represented and warranted by the defendant;" that it was not the "giant model 1913 type as represented by the defendant, but was in fact an earlier model which had been manufactured by the defendant in 1909 or 1910, and from which the model number and name plate had been removed and defaced so that it was impossible to identify the model and make;" that the engine that was in fact purchased was up-to-date and reasonably worth $1,800, while the engine delivered was old and of no value, "by reason whereof plaintiff suffered damages in the sum of $1,800;" that he paid defendant $450 in cash when the engine was purchased; that he gave two notes of $675 each; that the cost of hauling and installing the engine and other incidental expenses directly connected therewith caused an outlay by plaintiff of $950; "that by reason of the above-mentioned fraudulent representations and false warranties the plaintiff sufferd damages," not only with respect to the foregoing items, but he was also damaged in the years 1913 and 1914 by a decrease in the yield of his potato, hay, beet and grain crops in the sum of $11,933.50, and that the crop loss complained of was the immediate and the direct result of the incapacity and the inability of the engine to pump approximately the amount of water that was pumped by the engine formerly used by plaintiff on his farm, and that was necessary to properly irrigate the land, 'all of which defendant's agents represented and warranted the engine so purchased by plaintiff would do, and that because of such lack of water, so occasioned by defendant's fraud, approximately 175 acres of his farm land in 1913 and 1914 yielded only about one-third of the crop theretofore yielded by it; that his total damage aggregates $13,772 in the premises.

Defendant in its amended answer and cross-petition denied every material allegation in the petition; alleged that it sold "to the plaintiff through its agent, J. T. Morgan," of Gillette, Wyoming, the engine "referred to in plaintiff's

petition," under the terms of a written contract and written warranty; that it delivered, "installed, tested and operated" the engine on plaintiff's farm, and that he at the time "expressed satisfaction with said engine and the way it operated and did its work; " that he then paid to defendant's agent $450 in cash and delivered to the agent two notes for $675 each; that the engine "was well made, of good materials, and was durable if used with proper care. * * * Defendant states that said engine worked excellently until about August 1, 1913, when, because of the careless and negligent manner in which plaintiff and his agents took said engine apart and endeavored to put it together again, several important parts were broken. Defendant states that about August 29, 1913, its agents, though not bound by law so to do, repaired said engine as well as it was possible, and it avers on information and belief that the said engine since said date has run in a satisfactory way."

Defendant denied that any of its agents represented or warranted that the engine "was of sufficient capacity to pump enough water to irrigate the crops plaintiff proposed to raise or that the plaintiff explained to said agents * * * the crops he proposed to raise. Defendant avers that it was beyond the power and authority of the said E. A. Thorsen, mentioned as defendant's agent in the plaintiff's petition, or of J. A. Peterson, who with said Thorsen took said order, or J. T. Morgan, to make any representation or warranty whatsoever in respect to the said engine; that the authority of said agents and each of them was confined to soliciting the said written contract heretofore referred to, * * * and that the only warranty or representation made by defendant or binding upon it is the said warranty contained in said written contract. * * * Defendant denies that plaintiff is entitled to any damages whatsoever, but alleges that under the written contract plaintiff's damages, if any, are limited to the purchase price of said engine." Defendant alleged that no part of a $675 note given as a part of the purchase price, or the

interest thereon, has been paid by plaintiff, and prays that his petition be dismissed and for judgment on the note with interest and costs.

Defendant pleads as an exhibit a copy of the instrument under which the sale was made. So far as it is material here the copy follows: "Order for gas and gasoline engine. To J. T. Morgan. Town, Gillette. State, Wyo. The undersigned * * * hereby orders, subject to your approval and to all conditions of agreement and warranty printed on back of this order and made a part hereof, to be shipped * * * to J. T. Morgan * * * one International 50 H. P. Giant Double Opposed Cylinder Engine. * * * In consideration whereof, the undersigned will receive same on arrival, will pay to your order $450 cash, and execute approved notes payable to your order as follows: $675 due February 1st, 1914. $675 due February 1st, 1915. * * * It is expressly agreed that this order shall not be countermanded. * * * Taken by —— E. A. Thorsen and J. A. Peterson. * * * Signatures: Saml. D. Ditto." The instrument was signed by Mr. Ditto only. The instrument obligated defendant to furnish the engine "complete, including necessary fixtures" and "regular size of pulley."

On the back of the above instrument the following is indorsed as disclosed by defendant's exhibit: "Warranty and agreement. The seller warrants the within described engine to do good work, to be well made, of good materials, and durable if used with proper care. If upon one day's trial, with proper care, the engine fails to work well, the purchaser shall immediately give written notice to the seller, stating wherein the engine fails, shall allow a reasonable time for a competent man to be sent to put it in good order, and render necessary and friendly assistance to operate it. If the engine cannot then be made to work well, the purchaser shall immediately return it to the said seller, and the price paid shall be refunded, which shall constitute a settlement in full of the transaction. Use of the engine after three days, or failure to give writ-

ten notice to said seller or failure to return the engine as above specified, shall operate as an acceptance of it and a fulfilment of this warranty. * * * This express warranty excludes all implied warranties, and said seller shall in no event be liable for breach of warranty in an amount exceeding the purchase price of the engine. If within ninety days' time any part proves defective, a new part will be furnished on receipt of part showing defect."

Defendant further pleads: "By way of objection defendant states that plaintiff's petition is double, in that it seeks both to rescind the contract and to recover for breach of warranty under said contract."

It is argued by defendant that the sole question involved here is whether the court erred in directing a verdict for defendant over plaintiff's objection. The contention on this point seems to revolve, in large part, about an amended reply of plaintiff's that appears in the record, and upon this feature of the case there seems to be a deeply rooted divergence of opinion between the parties. It therefore becomes necessary briefly to review the record to discover the time when the original pleadings were filed and when and under what circumstances the amended pleadings of the respective parties, by leave of court, were filed or properly, by such leave, became a part of the record.

Plaintiff's petition was filed March 28, 1917, to which defendant filed an answer April 30, 1917. This answer is not in the record, but it appears that a reply was filed by plaintiff April 5, 1918, in response to defendant's answer of April 30. An amended reply consisting of 9 or 10 paragraphs is in the record, and the first paragraph recites, with respect to its filing, that plaintiff "first obtained leave therefor." With the exception of paragraph No. 9, which is added, the amended reply is the same as the original reply. The added paragraph follows: "Plaintiff specifically denies that he knew he signed any contract, as is set out in defendant's amended answer, but all this plaintiff signed was what was represented to him to be an

order for the said engine, without giving him any opportunity to read the same."

That permission was given plaintiff to file a reply to defendant's amended answer, "before the trial began," appears in an affidavit filed by defendant in support of a motion, filed in this court two days after the oral argument and submission of the case, to strike plaintiff's amended reply from the record. It is therein averred generally that "before said trial began" defendant asked and was given leave "to file an amended answer," and that plaintiff was given "permission to file a reply instanter; that immediately thereafter the case was tried upon the petition," the amended answer, and the reply of plaintiff "which was filed April 5, 1918; that said original reply was considered by both sides as being the reply to the amended answer."

Plaintiff's counsel does not concede defendant's position on this point. In a lengthy affidavit filed by him he denied in substance that plaintiff's reply of April 5, 1918, "was considered by both sides as being the reply to the amended answer," and avers that the amended reply was prepared, presented and ordered filed after the amended answer was filed, and that the trial then proceeded, but, by an oversight, the amended reply, which was in response to defendant's amended answer, was not actually noted in the records of the court as being filed until the date alleged by defendant; that the bill of exceptions, including the transcript which contained the pleadings, and among them the amended reply, was presented to and retained (the record shows 7 days), and then returned by defendant's counsel, settled and filed in the supreme court without objection.

It is apparent from the respective statements of the parties that the court was impartially indulgent as to both in permitting amended pleadings to be filed on the eve of the trial. The contest was warm throughout. The trial occupied six days and during that time there does not appear to have been a dull nor an idle moment either

for the court or counsel. Small wonder if some misunderstanding crept into the proceedings and was reflected by the record.

Notwithstanding the apparent confusion that the record discloses on this feature of the case, we hold that it sufficiently appears that the amended reply to defendant's amended answer was a part of the record at the time the case was tried, even though it may have lacked the formality of a file mark and entry on the appearance docket.

Respecting the merits: The nature of a written instrument is ordinarily, of course, to be determined by its language, subject however at times to the meaning placed thereon by the parties. The instrument in question in large type on its face, at the top of the page, is denominated: "Order for gas and gasoline engine." And it is referred to as an order four or five times in the body of the instrument. So that it is reasonable to believe that defendant's agents may have referred to it as an order and that plaintiff was thereby deceived.

Defendant contends that, under the provisions of the warranty, "it was beyond the power and the authority" of the agents who took the order "to make any representation or warranty whatsoever in respect to the said engine," and their authority was confined to soliciting the contract. Defendant also contends that plaintiff by his conduct waived the provisions of the warranty on which he now relies, in that he violated the provision that the "use of the engine after three days, or failure to give written notice to said seller or failure to return the engine as above specified, shall operate as an acceptance of it and a fulfilment of this warranty."

Defendant's argument is not tenable. The rule that is applicable to the present case on this point is discussed at some length in *Advance Thresher Co. v. Vinckel*, 84 Neb. 429, and therefore need not here be detailed at length. We may say, however, in brief that we there held:

"The fact that notice of failure of a machine to fulfil the requirements of a printed warranty is not given in the

manner provided by the contract is no defense against an alleged breach of warranty where the vendor under such notice as is given him by the vendee undertakes to remedy the defects complained of by the latter.

"Where a contract for the sale of a machine provides that a retention thereof by the vendee beyond a given period will operate as a waiver of defects, *held* to be inapplicable where the vendor induced the vendee to retain the machine under a promise that the defects would be remedied."

To substantially the same effect is *Fairbanks, Morse & Co. v. Nelson,* 217 Fed. 218.

Some evidence was introduced by the parties, and for the most part controverted, that in the present state of the record need not be here reviewed, tending to establish some at least of the material allegations of their respective pleadings. Such evidence should have been submitted to the jury. But with respect to plaintiff's offer to prove the damages that he contends he sustained from loss of crops because of failure of the engine in question to pump the required amount of water to irrigate and to mature such crops, we conclude that the court did not err in excluding his offer of proof on this point. The damages so claimed are uncertain, contingent, speculative, and remote, and cannot ordinarily, in an action of this nature, be made the basis of a recovery. 17 C. J. 753, sec. 86.

Upon a review of the entire record, consisting of almost 1,000 pages, we conclude that justice will be best served by a new trial. The judgment is therefore reversed and the cause remanded for a new trial in conformity with the views herein expressed, with permission to the respective parties, or either of them, to amend their pleadings if so advised.

REVERSED.