ORVILLE E. BUCKLEY, APPELLEE, V. ADVANCE RUMELY THRESHER COMPANY, APPELLANT.

FILED MAY 16, 1921. No. 21589.

1. Sales: Delivery: Breach of Warranty. When a machine does not fulfil the terms of the vendor's warranty and, over the

vendee's protest, is left by the agent with the vendee's prospective purchaser, such action on the agent's part does not constitute a delivery. It follows that the vendee is not obliged to return the machine in order that he may maintain an action for damages.

2. ———: ———: NOTICE. A contract for the sale of a machine provided that notice of defects therein should be given by the vendee by registered mail addressed to the vendor at its head office. *Held* that, when it clearly appears that the machine has not been delivered, the provision for notice is not obligatory.

3. ———: WARRANTY: PROOF. When an implied warranty and an express warranty relate to the same or a closely related subject, proof of the implied warranty will be excluded.

4. ———: ———: BREACH. Where the vendor undertakes a practical demonstration of a machine to prove its workability, even though the contract of sale does not provide therefor, and the machine, when given a trial, fails to comply with an express warranty under which it was sold, the vendee is not bound by the contract.

5. Corporations: PROCESS: SERVICE. *Held*, that the service of process herein upon the auditor of public accounts was a sufficient compliance with section 725, Rev. St. 1913, to confer jurisdiction over a foreign corporation doing business in Nebraska.

APPEAL from the district court for Thurston county: GUY T. GRAVES, JUDGE. *Affirmed.*

*Howard Saxton* and *Good & Good,* for appellant.

*R. E. Evans* and *Sidney T. Frum, contra.*

DEAN, J.

Plaintiff is a dealer in agricultural implements. He sued to recover the purchase price of a tractor gang plow, alleging misrepresentation and breach of warranty. A jury was waived. Plaintiff recovered a judgment for $1,286.25, which included the purchase price, interest and freight. Defendant appealed.

Though there is some conflict in the evidence the following material facts seem fairly to be established. The tractor plow was purchased by plaintiff through G. Mattison, one of defendant's agents, pursuant to the terms of a written contract executed September 8, 1917. A warranty is indorsed on the contract, of which it is a part,

which reads: "Said machinery is warranted to be well made and of good material, and with proper use capable of doing as good work as any other machine of the same kind, size and rated capacity, working under like conditions."

It appears that the tractor plow was shipped to Winnebago station, and was consigned by defendant to "order of Advance Rumely Co." Upon arrival at Winnebago, H. Mooney, an agent and tractor plow expert in defendant's employ, collected the purchase price and freight from plaintiff before the machine was tested. Subsequently it was unloaded from the car and prepared by him for a trial, and by him driven about two miles distant to the farm of C. C. Frum, plaintiff's prospective buyer. On September 16, 17, and 18, Mooney attempted to operate the plow, but it clearly appears that it failed to do the work for which it was intended and which it was warranted to do. When the field demonstration was closed plaintiff informed Mooney that the plow did not meet the warranty, and that, in view of his failure to make it work, he refused to accept it and demanded a return of his money. On September 25, 1917, and at subsequent intervals, plaintiff, by letter addressed to the Lincoln agency, repeated his complaint and again demanded repayment of the purchase price and freight. It also appears that Frum told Mooney to take the plow away from his farm because, as he says, he informed him that it was worthless. It seems though that, over Frum's protest, as he testified, "Mooney took the tractor around north of the corn-crib and left it." Apparently it has remained there ever since, though there is some evidence on the part of one of defendant's employees that, upon subsequent examination of the tractor, it appeared to him that it had been used to furnish power, apparently for some sort of a belt machine. On this point, however, the evidence conflicts.

It was shown that other tractor plows of substantially the same size and rated capacity, when working under sub-

stantially the same conditions as to soil and the like, did good work. One witness, who appears to be a practical tractor plowman, testified that the soil where defendant demonstrated its tractor plow was in normal condition, and that other plows of substantially the same sort "would pull three plows all over the Fisher land and do good plowing, under exactly the same conditions as existed at the time when the Rumely tractor was tried out on that land." To substantially the same effect is the evidence of three or more disinterested witnesses who were apparently conversant with the subject and qualified to testify. They testified that they had seen two or more tractor plows of different companies, but of the same general size and capacity as the tractor plow in question, doing good work under substantially the same conditions. On this point it may be said there is sufficient evidence to support the court's finding, which was, in effect, that the tractor plow in suit was not "capable of doing as good work as any other machine of the same kind, size and rated capacity, working under like conditions."

Defendant argues that because plaintiff did not return the tractor plow he cannot therefore recover for a breach of the warranty. It seems clear that the facts do not warrant the conclusion that, in legal effect, there was a delivery or an acceptance. Plaintiff was not obligated, under the facts, to accept the plow. It was consigned to defendant's order and, for all of the time material to the issues here, it was in the possession of defendant by its agent who attempted, but failed, to make it work, and subsequently left it at the farm where the demonstration was had. Apparently it remained there subject to defendant's order and under its control. In view of the facts it is obvious that no obligation rested on plaintiff to return it to the company.

Defendant relies upon this recital in the warranty clause of the contract: "Purchaser shall not be entitled to rely upon any breach of above warranty * * * unless: (a) Notice of the defect or breach, particularly de-

scribing the same and specifying the time of discovery thereof, is given by registered letter addressed to vendor at its head office, posted within four days after such discovery." Plaintiff argues that he was not obligated to notify defendant of the defects of which its operating agent then on the ground was already advised. In support of his argument he cites *Advance Thresher Co. v. Vinckel*, 84 Neb. 429; *Ditto v. International Harvester Co.*, 105 Neb. 544; *Fairbanks, Morse & Co. v. Nelson*, 217 Fed. 218. The majority of the court, however, conclude that the question of notice, that is argued at great length by the parties, is not, under the facts, involved herein. It follows that, in view of our conclusion on this point, we do not find it necessary to decide the question respecting notice.

Plaintiff contends that certain inducements were offered to him that caused him to execute the written contract, and that such inducements constitute an implied warranty. We conclude that the express warranty excludes the implied warranty, for which he contends, because it had to do with practically the same subject. Defendant cites 35 Cyc. 392, wherein the general rule is well stated: "An express warranty will exclude an implied warranty on the same or a closely related subject. Thus an express warranty of quality will exclude an implied warranty of fitness for the purpose intended."

It is contended by defendant that, when "Buckley paid the freight and made settlement * * * before the tractor was unloaded, * * * title at once passed to him." In its brief it is also said: "The court will search in vain in the contract for any provision which obligates us to demonstrate this tractor. * * * It is true that as a matter of courtesy the defendant company sends an expert to the place of delivery and teaches the new owner how to use the tractor."

It is a harsh rule for which defendant contends. The lesson that was communicated to the prospective purchaser was more than a courtesy. It was a business en-

terprise undertaken with a view to the sale of a tractor plow. The fact that the machine was unloaded and freight paid and settlement made, as contended by defendant, did not, under the facts, release defendant from its contractual obligation to deliver that which it agreed to deliver. The warranty plainly contemplates a workable tractor plow. The warranty was not fulfilled. It follows that it would be unconscionable to permit defendant to prevail on either point.

Another feature of the case remains. Service was obtained on defendant by delivery of a summons to the state auditor of public accounts at Lincoln, under section 725, Rev. St. 1913. Defendant appeared specially and argues that the district court did not have jurisdiction of the subject-matter of the action. The language of section 725 is involved and obscure, but the object of that part relating to service of summons seems to be to provide, in effect, that a foreign corporation is "found," within the meaning of section 7619, Rev. St. 1913, in a county "where the cause of action, or some part thereof, arose, or in counties where the contract, or portion thereof entered into by such corporation has been violated or is to be performed." Service on the appointed agent or on the auditor of public accounts is sufficient. The general rule as to venue is not changed. The provisions of the act are salutary. We know of no reason why a foreign corporation that is permitted to do business in Nebraska should not be holden to answer in any county in the state where its contract has been violated or where its provisions are to be performed.

The evidence supports the judgment. It is therefore

AFFIRMED.

ROSE, J., not sitting.