WILLIAM H. PITZER, APPELLANT, V. STIFEL, NICOLAUS & CO., INC., APPELLEE.

9 N. W. (2d) 495

FILED MAY 14, 1943. No. 31581.

*Lloyd E. Peterson* and *Varro E. Tyler,* for appellant.

*Finlayson, Burke & McKie,* contra.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

WENKE, J.

William H. Pitzer, plaintiff and appellant herein, filed his petition, as amended, in the district court for Otoe county, Nebraska, alleging Stifel, Nicolaus & Co., Inc., a corporation, defendant and appellee herein, is a foreign corporation engaged in business as brokers and the buying and selling of municipal and other securities and had transacted such business within the state of Nebraska as alleged and in other respects, but without appointment of an agent for service of process or by otherwise qualifying as a foreign corporation to transact business within the state of Nebraska as required by the laws of said state; that the Waubonsie Bridge Company, a Delaware corporation but qualified to transact business in Nebraska as a foreign corporation, owned and operated a toll bridge across the Missouri river near Nebraska City; that defendant, being desirous of financing the purchase of the bridge by the county of Otoe or the city of Nebraska City by agreeing to purchase and accept revenue bonds given in payment thereof, and desiring to secure legal representation in Nebraska City as to local matters in connection with the negotiations therefor, did on and prior to May 10, 1939, send Mr. R. R. Cravens, one of its vice-presidents and a duly authorized officer and agent, to confer with plaintiff, a duly licensed and practicing attorney at law, in Nebraska City and there solicited his services to represent the defendant therein; that as a result of these negotiations the plaintiff accepted

employment by the defendant, as is evidenced by a letter of May 10, 1939, sent by the defendant from its Chicago office to the plaintiff and signed by Jos. D. Murphy, vice-president, which reads in part as follows: "This will confirm your understanding with Mr. R. R. Cravens. We understand that you are to represent us in all local legal matters in connection with our attempt to sell the Waubonsie Bridge to Nebraska City, Nebraska," and then goes on to state the terms of the employment; that pursuant to his employment the plaintiff represented defendant in endeavoring to have the county of Otoe purchase the bridge but such negotiations terminated on December 12, 1939, when the county refused to be a purchaser; that on December 12, 1939, the plaintiff advised the defendant, by a letter addressed to Mr. R. R. Cravens, its assistant vice-president, at St. Louis, Missouri, that the negotiations with the county had failed and inclosed a statement for his services and expenses, but advised if they desired it was satisfactory with him that the agreement, evidenced by the letters, be extended to include services which he might render before the city commissioners and the payment already made to be in consideration thereof provided that the additional compensation as therein set forth be paid if the negotiations were successful; that in reply thereto defendant on December 14, 1939, in a letter from its Chicago office signed by Tuthill Ketcham, vice-president, addressed to plaintiff stated: "Referring to your letter of December 12 accompanying the statement, we would like to have you continue to represent us before the City Commissioners as you have offered to do, on the basis outlined in your letter;" that pursuant thereto and on February 1, 1940, the defendant made a proposal in writing to the city commissioners of the city of Nebraska City to furnish the necessary funds for the purchase of the bridge and to accept revenue bonds in the sum of $868,000 in payment thereof; that this offer was accepted on that date and subsequently, after proper procedure was taken, the bridge was purchased and revenue bonds in the sum of $868,000 were issued and delivered to appellee; that during

the time from December 14, 1939, to August 10, 1940, when the purchase of the bridge and issuance of the bonds were finally consummated, the plaintiff represented the defendant in accordance with this employment and by reason thereof the defendant became indebted to plaintiff for $2,-000 for which he prays judgment with interest and costs.

Whereupon summons was issued to the sheriff of Lancaster county and service upon the defendant was had by delivering a summons to Ray C. Johnson, state auditor of the state of Nebraska, at his office located in said county.

The defendant filed its special appearance with supporting affidavit, which was sustained, and upon plaintiff's election to rely thereon, the court on November 21, 1942, quashed the summons and dismissed the plaintiff's petition and from this order the plaintiff has appealed.

Subsequent to the appeal, the plaintiff, William H. Pitzer, died and Varro E. Tyler and Lloyd E. Peterson were appointed executors of his estate and by stipulation of the parties, dated February 25, 1943, this action was revived in the names of said executors.

The first question presented by this appeal is whether or not the defendant, within the provisions of section 24-1201, Comp. St. 1929, which reads in part as follows: "Every foreign corporation, as hereinafter defined, * * * shall appoint an agent or agents in this state, within thirty days after the taking effect of this article, and before it shall be authorized to *engage in any kind of business* in this state such foreign corporation shall file in the office of the Secretary of State a certificate from the Secretary of State or other proper officer of the state, territory, district or country under the laws of which such foreign corporation is formed, setting forth that such corporation has complied with the laws of such state, territory, district or country relative to the formation of corporations of its kind, and is a regularly and properly organized corporation thereunder. Such foreign corporation shall also make and file a certificate signed by the president or secretary of such corporation, duly acknowledged, in the office of the secretary

of state, and also, in the office of the register of deeds of the county in which its principal place of business in this state shall be located, designating its principal place of business in this state, and appointing an agent or agents in this state, who shall be designated by his official title, and one of whom shall reside at such principal place of business, upon whom process, or other legal notice of the commencement of any legal proceeding, or in the prosecution thereof, may be served; and such service of process or of any such other legal notice, as aforesaid upon the auditor of public accounts, or upon any such agent, or agents, shall constitute valid service upon such corporation in all courts of this state, in counties where the cause of action, or some part thereof, arose, or in counties where the contract, or portion thereof entered into by such corporation has been violated or is to be performed" (Italics ours), was engaged in any kind of business so as to be subject to the jurisdiction of the courts of this state by service of summons upon the auditor of public accounts, it being admitted that the defendant was a foreign corporation and that it had not complied with the provisions of the act.

We have examined the Nebraska cases cited by both appellant, who is referred to herein as plaintiff, and appellee, who is referred to herein as defendant, and find none of them to be exactly in point. However, in the case of *Council Bluffs Canning Co. v. Omaha Tinware Mfg. Co.*, 49 Neb. 537, 68 N. W. 929, we find this language used by the court: "It may be said that the company, plaintiff in error, was an Iowa corporation; that the evidence adduced at the hearing on the objections to the jurisdiction of the court, although conflicting, was amply sufficient to sustain the finding that the contract, from which arose the claim involved herein, was a Nebraska contract, a business transaction of the foreign corporation, within this state, and further, that it was engaged in other and further acts in this state, directly within its province as a corporation. By so doing it brought itself within the state and subject to the jurisdiction of the courts of Nebraska, and subject to their process,

at least in actions growing out of such affairs. By the transactions of the corporation, including the one out of which arose the claim on which this action is based, the corporation was sufficiently engaged in business in this state to be amenable to the jurisdiction of its courts and subject to the process thereof when legally served, at least in an action for the recovery of the account, the result of such business." And in the case of *Village of Axtell v. Nebraska Hardware Mutual Ins. Co.*, 142 Neb. 657, 7 N. W. (2d) 471, the court in a case involving the question of an occupation tax under an ordinance using the words "doing business in this village" held: "As used in the ordinance here construed 'doing business' implies a fair measure of permanency and continuity of business acts and purposes, in the sense that they may be distinguished from casual, occasional or isolated acts or business transactions." We have examined the authorities and the majority holdings are as stated in 20 C. J. S. 150, sec. 1920: "While absolute continuity is not required, the business done must be continuous in such a sense as to be distinguishable from mere casual, isolated, or sporadic transactions, such as occasional purchases or sales. A single isolated act or transaction does not constitute a doing of business within the state, unless the transaction be of such magnitude and of such duration as to require the making of numerous subsidiary contracts." And in 23 Am. Jur. 353, sec. 370: "Consonant with the general doctrine that the doing of business imports the engagement by a foreign corporation in some continuing activity in the state, or the transaction of some substantial part of its ordinary business there, it is a generally accepted rule that single or isolated acts, contracts, or transactions of such corporations in the state will not ordinarily be regarded as a doing or carrying on of business therein, even though they may be said to fall within the usual or customary business of the corporation."

In the case of *Beach v. Kerr Turbine Co.*, 243 Fed. 706, cited by plaintiff, the court there stated the general rule to be: "An isolated or single sale of goods in a state by a for-

eign corporation, or even occasional repetitions of such sales, is not doing business within such state." However, the court did go on to hold that under the single contract involved therein wherein the corporation sold three turbine pumps, same to be installed, defendant had become subject to the jurisdiction of that state for the following reasons: "It is true, we are dealing only with a single contract or sale; but the terms thereof required the foreign corporation to come into the state with its agents and employees and perform certain acts—in other words, to do business." This is not a hard and fixed rule, for as stated in *St. Louis S. W. Ry. Co. v. Alexander*, 227 U. S. 218, 33 S. Ct. 245, "No all embracing rule has been laid down as to what constitutes the manner of doing business by a foreign corporation to subject it to process in a given jurisdiction. Each case must be determined by its own facts," and in *Village of Axtell v. Nebraska Hardware Mutual Ins. Co.*, *supra*, "In the absence of a legislative definition, the meaning of 'doing business' is a matter for judicial determination, to be made primarily upon the particular facts and circumstances of each case." For that reason we do not undertake the impossible task of declaring a definition applicable to all situations as no all determinative, fixed, definite or precise rule for construing the words can be written.

The only case in point cited by plaintiff is the case of *Chattanooga Nat. Bldg. & Loan Ass'n v. Denson*, 189 U. S. 408, 23 S. Ct. 630, wherein the single contract which did not require the Building & Loan Association to come into the state with its employees and agents was held to be doing business within the state. While there is a difference in the wording of the Alabama statute there involved and ours and it covers domestication rather than process, however, it is not necessary to distinguish the case on those grounds for there are other states having the same statute as that of Alabama that have held to the contrary and it is definitely a minority ruling. We find the majority holdings to announce the better rule.

Applying the foregoing to the situation herein, we find this defendant entering into a single contract, there is nothing to show that any other contract was entered into either before or after or that this defendant intended in any manner to come into this state to carry on its business. The contract set forth involved a considerable amount of money but did not require the defendant to come into this state and set up an office, hire employees, appoint agents or do the things generally done in connection with engaging in business. While there may be cases, as in *Beach v. Kerr Turbine Co., supra,* where a single contract creates a situation when it can be said that the party has thereby engaged in business in this state, however, we do not find, from the facts set forth in plaintiff's petition, as amended, that the defendant here did so.

We have, for the purpose of this discussion, assumed that the contract was a Nebraska contract, but under the holdings in this decision it does not become necessary to make a determination as to whether it is or not.

For the reasons herein stated, the ruling of the lower court sustaining the special appearance is affirmed.

AFFIRMED.

PAINE, J., dissenting.

In this case the defendant company on May 10, 1939, sent its vice-president to Nebraska City and solicited the services of plaintiff, now deceased, as its agent to undertake and complete transactions, for and on behalf of said defendant, to promote the sale of the Missouri river bridge, owned by the Waubonsie Bridge Company, to Nebraska City or to Otoe county, which purchase would be closed by the issuance of revenue bonds to be delivered to defendant company. Another vice-president, in a letter from the Chicago office, confirmed in writing the terms of the employment as made with the first vice-president, and agreed to pay plaintiff $500 for actual time given to the transaction of their business, and agreed to pay $2,000 if the bonds were delivered to defendant company.

After considerable correspondence, set out in the peti-

tion, and negotiations by the plaintiff, extending for months and involving intricate transactions, Otoe county would not buy, but finally the city purchased the bridge, and the title and ownership were transferred to the city on August 10, 1940, and revenue bonds for $868,000 were issued by Nebraska City in payment for the bridge, which revenue bonds, it is alleged in the petition, were delivered to the defendant company, and the defendant paid Nebraska City $815,000, of which $800,000 was paid to the Waubonsie Bridge Company, there being left the sum of $15,000, the disposition of which is not shown by the petition. An officer of the defendant company signs an affidavit supporting the special appearance, alleging that the bonds were purchased by another investment banker.

The plaintiff, having brought this series of difficult negotiations, lasting over a year, to a successful conclusion, was unable to collect from the defendant the $2,000 agreed upon for his services. He brought suit and served the summons for the defendant on the state auditor, as provided in section 24-1201, Comp. St. 1929, the defendant being a foreign corporation.

It is admitted that the defendant company did not comply with the law of Nebraska relating to foreign corporations engaging in business in Nebraska, but this court has held in *Buckley v. Advance Rumely Thresher Co.*, 106 Neb. 214, 183 N. W. 105, that such service may be made on the theory that a foreign corporation, after engaging in business in Nebraska through a duly appointed and authorized agent and completing the same, cannot plead or prove its violation of the law providing what steps it should have taken, before engaging in business, to invalidate a service of summons made upon it through the state auditor.

Naturally the defendant company did not rent stores, ship goods to be sold in the state, hire clerks and managers, and transact business in the way it was done in the case of *Yoder v. Nu-Enamel Corporation*, 140 Neb. 585, 300 N. W. 840, for that is not the kind of business that this defendant was organized to do. In the transaction of its busi-

ness it required an experienced lawyer, who was able to handle large bond transactions with municipal authorities, and defendant employed just that kind of a successful attorney to meet the legal questions, and it also required a man who was experienced in financial transactions. This is the way and the method by which companies engaged in such business transact business in a foreign state, and to say that an attorney and an agent is helpless to sue such a foreign corporation under this section of our law in the exact place where they have transacted their business is to place such attorney and agent at the mercy of any such corporation which finally decides that it will not pay its attorney and agent for his services.

In the case of *Schwabe v. American Rural Credits Ass'n,* 104 Neb. 46, 175 N. W. 673, service upon a deputy state auditor was held not good, and among the reasons it was stated that at the time the service was attempted it was not doing business in the state, but had quit the state. However, the majority rule is that the withdrawal of the corporation from the state does not relieve it from liability in an action arising out of business which it had just completed in the state, and this rule is supported by more than 20 states in the Union, as set out in the annotation, 45 A. L. R. 1447, and supporting this we find *Yoder v. Nu-Enamel Corporation,* 117 Fed. (2d) 488, in which a former member of this court, Judge Harvey Johnsen, now circuit court judge, said that a corporation undertaking to do business in the state is bound by the automatic appointment which the statute makes.

In a discussion of this matter in 21 Neb. Law Review, 164, attention is called to the injustice of a rule which would allow a foreign corporation to come into this state to do business, make a contract and then withdraw, and force the injured party to go to the forum of the corporate domicile to seek relief, for it has been stated that to force a citizen to go into the courts of a foreign jurisdiction for the collection of a debt contracted by a foreign corporation in this state is a practical denial of justice, and to avoid

such injustice a statute allowing service upon the state auditor should be liberally construed to promote the purpose of its enactment. See *Morey v. Standard Separator Co.*, 174 Ia. 530, 156 N. W. 719. In my opinion the special appearance should have been overruled.