## NAGL v. NORTHAM WARREN CORPORATION.

Civil Action No. 256—46.

District Court, D. Nebraska,
Omaha Division.
April 16, 1948.

Richard E. Robinson and Schall, Robin-son, Hruska & Garvey, all of Omaha, Neb., for plaintiff.

Ralph E. Svoboda and Kennedy, Holland, DeLacy & Svoboda, all of Omaha, Neb., for defendant.

DELEHANT, District Judge.

The plaintiff, a resident of Omaha, and a citizen of Nebraska, instituted this action in the District Court of Douglas County, Nebraska against the defendant, a New York Corporation having its principal office and place of business in Stamford, Connecticut, to recover judgment for a sum largely exceeding, exclusive of interest and costs, the amount of three thousand dollars,

as damages sustained by the plaintiff in consequence of the defendant's alleged conversion of certain shares of stock in U. S. Brush Company of Omaha (hereinafter referred to as Brush Company), a Nebraska corporation, which shares were formerly owned by the plaintiff. Process was ostensibly served on the defendant by a deputy sheriff of Douglas County, Nebraska, who stated in his return to a summons, regular in form and of a type generally in use in Nebraska's courts, that he delivered a true and certified copy of the summons with all endorsements thereon "to Northam Warren, president of said corporation, who was in charge of the office at the usual place of doing business of said corporation in Douglas County, Nebraska, personally in Douglas County, Nebraska".

The defendant caused the removal of the action to this court on the ground of diversity of citizenship, Title 28 U.S.C.A. §§ 41(1) (c) and 71; and thereupon, without answering, served and filed a pleading entitled "Special Appearance of Northam Warren Corporation," in which it challenged the validity of the service and return of summons upon the defendant and the court's jurisdiction over the defendant's person. That pleading calls for the present ruling.

Presumably, the defendant was motivated in the formulation of its pleading by an inordinate attachment to the procedural usages of the state courts of Nebraska under its Code of Civil Procedure, or at least subjected to the intelligible dubiety with which counsel approach in those courts the task of challenging jurisdiction over their clients' persons. It need hardly be observed that, although the formal service of process in the present action was effected in the state court, it is being attacked here and the weapons for that purpose are those provided for the practice in this court. The verbose and repetitious "special appearance" so familiar to practitioners in Nebraska's courts is certainly not one of those weapons. And its attempted employment is quite out of harmony with either the language or the spirit of the rules. The court, therefore, might appropriately strike the "Special Appearance" as an unauthorized pleading, and allow the defendant to consider whether, by serving and filing a pleading beyond the contemplation of the rules governing procedure here, it may have appeared generally in the action. But, since the filing directs attention to Rule 12(b), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and its purpose is clear, and the plaintiff has not questioned its adequacy to raise the question at which it aims, it is being treated as a motion presenting the related defenses of lack of jurisdiction over the defendant's person, Rule 12(b) (2), and insufficiency of the service of process, Rule 12(b) (5). But the court's pursuit of that course does not involve the acknowledgment of its necessity. Much less does it foreshadow like indulgence in the future administration of the applicable rule by this court.

The question has been submitted upon the complaint (petition in state court); the summons and return thereto; the special appearance; and sundry affidavits served and filed in behalf of both parties. Counsel have assisted the court by the submission of exhaustive briefs, the court's interest in which must not be appraised mistakenly by the relatively meagre citation of authorities by which this memorandum is characterized.

From the showings made, the following facts are found by the court, as the basis for the ruling herein announced:

On, and for a substantial period prior to, January 1, 1934, Brush Company was, and it ever since has been, and now is, a corporation organized under the statutes and laws of Nebraska, having its principal place of business in Omaha, Douglas County, Nebraska, and engaged in the manufacture and sale of sundry items which presently include and for some time have included industrial brushes, artists' brushes, nail polish brushes, applicator brushes, emery boards, orange wood sticks and plastic closures. Through the same period, and prior to its inception, the defendant was, and it now is, a New York corporation, having its principal office and place of business in Connecticut, and engaged in the

business of preparing and selling cosmetics, toiletries, nail polish, emery boards, and orange wood sticks.

At no time has the defendant ever been licensed or permitted, or sought license or permission, by the state authorities of Nebraska to do business in that state, or designated any person, firm or corporation as its resident agent, or one authorized to receive, or be served with, process in behalf of the defendant. Nor has the defendant ever established or had or maintained any office or place of business, or done or transacted business within Nebraska, unless its relations and transactions with Brush Company, as herein recited and found, constitute the doing of business within that state for the purpose of the present inquiry.

Throughout January, 1934, and prior thereto, the plaintiff was a resident of Omaha, Nebraska and the president and general manager of Brush Company. Of Brush Company's capital stock he owned twenty-three shares, each of the par value of one hundred dollars. The remaining shares of its capital stock (consisting, as the plaintiff claims, of two hundred eighty-two shares, and, as the company's records appear to show, of two hundred seventy-nine and three-fourths shares, the discrepancy being entirely immaterial) were then owned by sundry other persons unrelated to this action.

In January, 1934, the defendant, acting through Marshall T. Brekke (presently a resident of New York, and then a resident of New York or another Eastern state), one of the officers and the agent of the defendant, purchased all of the shares of the capital stock of Brush Company except the twenty-three shares owned by the plaintiff, and, as to those twenty-three shares, acquired at least their apparent title through the assignment and delivery to it of the certificate or certificates evidencing their ownership. (Whether the assignment thus made was an absolute sale, as the defendant seems to contend, or a merely formal transfer under a promise by the defendant thereafter to purchase the stock at a price to be agreed upon, as the plaintiff asserts, is not determined, for that is at the core

of the basic claim of the plaintiff against the defendant and is not vital to the question of the validity of service of process.) Thereafter, the defendant has been the owner (subject to any rights that may remain in the plaintiff in the twenty-three shares) of all of the capital stock of Brush Company, which it has caused to be held from time to time by its nominees. In the negotiations for the acquisition of the stock, Brekke came into Nebraska and conducted at least some and possibly all of the interviews within that state, representing only the defendant in the premises.

Upon the defendant's acquisition of Brush Company's capital stock, the latter's board of directors was reorganized, and thereafter until his resignation the plaintiff was one member of the board which also included, with some changes in personnel, two attorneys, members or associates of the law firm which before 1934 had been, and has continued to be, and now is, counsel for Brush Company. No officer or director of the defendant was ever a director or officer of Brush Company. Until his resignation, the plaintiff also continued to be the president of Brush Company. Since the plaintiff's resignation, three members or associates of the law firm have constituted its board of directors.

In the interval between its acquisition of Brush Company's capital stock and the making of the service of process challenged on this occasion, the defendant's dealings with, and concerning, Brush Company were numerous. Some of them are shown by the affidavits submitted in the record to have been conducted by Brekke, some by Northam Warren, the president of the defendant, and still others are attributed to the defendant without the precise identification of the officers or agents through whom it acted.

Brekke's activities are identified more frequently than those of Northam Warren. He made frequent trips for the defendant to Omaha, averaging two or three yearly between 1934 and 1946. On those occasions he examined into the condition and business operations of Brush Company; made suggestions, and gave directions, both orally and in writing, touching its manage-

ment and policies as to labor relations, manufacturing and selling program and many other details; conferred with its officers and employees; made investigations touching, and gave advice and decisive directions to Brush Company's officers respecting, its opening of branch plants in two Nebraska towns and the acquisition of a hair processing plant, also within that state; personally participated in behalf of Brush Company in negotiations with Moulding Service Inc. for the purchase of supplies by Brush Company from Moulding Service Inc. (though, whether these negotiations were conducted in Nebraska is left uncertain in the showings); and negotiated with Brush Company's bank in Omaha for the latter's extension of credit in substantial sums to Brush Company.

Through several years, and possibly, though not certainly, all of the period between January, 1934, and the plaintiff's resignation, Brush Company paid Brekke two thousand dollars annually for his services to and in behalf of it, without specification of the exact identity of the services thus compensated. This course was pursued with the knowledge and at the suggestion of the defendant, though precisely who made the suggestion is not clearly disclosed.

Northam Warren made only infrequent calls at Omaha during the interval involved, probably not more than five in all. During such calls he generally inspected the property, and business operations and results, of Brush Company, counseled with its officers, and particularly the plaintiff, and made suggestions and gave directions, both orally and in writing, touching its general business program and special problems. He was in Omaha on one of those calls on September 20, 1946 when he was served with summons in this action by a deputy sheriff of Douglas County, Nebraska. Notwithstanding the recital of the return to that summons quoted earlier in this memorandum, that recital, beyond its report of the physical delivery of the copy of summons to Warren and its statement touching his office in the defendant corporation, was, and is, entirely false. Northam Warren was not, on the day, or at the time, of the attempted service, in charge of any

office in Nebraska of the defendant, or even of Brush Company's office. And if the return is to be understood as stating that the recited delivery of the copy of the writ was made "at the usual place of doing business of said corporation in Douglas County, Nebraska" it is peculiarly false in that the delivery was actually made to Northam Warren in a transient sleeping room in a public hotel occupied by him as a guest on that occasion for the period of a few days.

The defendant, without precise identification of the person or persons acting in its behalf, is satisfactorily shown also to have (a) approved the continued retention of—though it did not, as the plaintiff asserts, originally select—Brush Company's attorneys who had represented it prior to 1934, (and were at all times paid by it and not by the defendant for their services) to represent it thereafter; (b) bought and sent to Brush Company's Omaha plant three multi-slide machines costing forty-five thousand dollars, upon written leases that were renewed from time to time requiring the payment to the defendant of rentals by Brush Company for their use in its manufacturing business; (c) for the single year 1941, joined Brush Company with itself in a consolidated corporate Federal income tax return; and (d) advanced certain items for portions of the salaries or wages earned by some of the officers or employees of Brush Company in order to intercept the complete understanding within Brush Company's personnel of its managerial salary structure, but also received towards the end of each year reimbursement from Brush Company for such advancements during the year.

The defendant, in the course of its own business, was a large purchasing customer of Brush Company's products, taking a substantial percentage of the latter's output and enjoying a preference in price in comparison with other purchasers. Whether that preference was or was not warranted upon the basis either of quantity purchases or of the elimination of selling costs or otherwise does not appear. So, the court makes no finding touching its justification. But Brush Company consistently had some one hundred other customers and sold its prod-

ucts generally in the open market and to others than the defendant.

At all times involved in this action, Brush Company's corporate entity and existence were consistently maintained in accordance with the laws of Nebraska; meetings of its stockholders and directors were regularly held and the records thereof carefully preserved, all under the supervision and direction of its Omaha attorneys. Brush Company, and it alone, operated in its name the manufacturing and selling business publicly attributed to it. At no time did the defendant formally operate that business or any part or aspect of it. It is true that, from and after the acquisition by the defendant of Brush Company's capital stock, its managing officers, including the plaintiff while he remained its president, conducted its business in harmony with the wishes and suggestions and directions of the defendant, and kept regularly in touch with the defendant through correspondence and personal journeys to Omaha in the defendant's behalf of Brekke and Northam Warren.

The plaintiff on December 8, 1945, first tendered his resignation as president of Brush Company to the defendant's president who, by telegram, directed the plaintiff to deliver it to Brush Company's board of directors. At that time Brekke was in Omaha and expresed his approval of the resignation, although no formal action to that end is shown ever to have been taken by Brekke. And the resignation was actually tendered to and accepted by Brush Company's board of directors, whose action was taken on December 11, 1945.

After the time of its acquisition of the ownership of the capital stock of Brush Company, the defendant, from its central offices outside the state of Nebraska, through correspondence, kept in touch with the conduct of Brush Company's business and, both generally and in respect of many concrete details, directed, corrected or approved from time to time the transaction and management of Brush Company's business affairs and policies. This course on the defendant's part is not narrated with precision in the showings before the court, but the factual finding just announced is clearly inferable from the showings that are made.

It is satisfactorily shown by affidavit, and the court finds, that at various times during the continuance of the relations between the plaintiff and the defendant, the plaintiff through procurement by Northam Warren or Brekke, (a) testified before a congressional committee in Washington, D. C. in support of the imposition of a high tariff upon brushes imported from Japan, and, thereafter, in company with Brush Company's attorney reported upon the committee's hearing to executives of the defendant in New York; (b) had some part, along with Brush Company's attorney in making representations upon a customs problem to United States customs officials and reporting thereon to the defendant's executives; and (c) acted in behalf of the defendant, but without disclosing his agency or his principal, in purchasing a business in Toledo, Ohio, theretofore competitive with the defendant. However, having found those facts to be true, the court merely declares that they can not possibly be relevant in any way to the question whether the defendant was doing business in Nebraska at the several times of such enterprises. At most, they show a general cooperation between the plaintiff and the defendant's officers, sometimes extending beyond the strict limits of Brush Company's business, and into states other than Nebraska.

In summary, the activities of the defendant, through its officers or agents, upon which the plaintiff relies to support his claim that the defendant was doing business within Nebraska, and the resultant validity of the service of process upon it may be said to include (a) the acquisition of the capital stock of Brush Company; (b) subsequent thereto, the observation and general direction of the policies and program of Brush Company which are within the competency of, and are to be expected from, the owner of all of the capital stock of a corporation, with the provision, however, that Brush Company's policies and program were administered and its business conducted entirely by itself through its own officers and employees; and (c)

the leasing to Brush Company for use in the latter's manufacturing plant located in Nebraska of certain machinery of substantial value, and upon a rental basis yielding a considerable return to the defendant.

The question presented is whether those activities, either singly or in combination, including the many and continuing details of the second one, constitute the doing of business in Nebraska by the defendant. The court is persuaded that it must be answered negatively. In consequence, the attempted service of process upon the defendant must be rejected as invalid and the action dismissed.

A preliminary and unquestioned rule may be observed. It has been held consistently that the mere presence within a state of the president, or other officer, of a foreign corporation, which is not doing business within the state, does not subject the corporation to liability to suit within the state or render it amenable to the service of process issuing out of the courts of the state through delivery thereof to the officer in question. The officer of the corporation does not draw the corporation into every state where he may be from time to time. Fitzgerald & Mallory Construction Co. v. Fitzgerald, 137 U.S. 98, 11 S.Ct 36, 34 L.Ed. 608; Rosenberg Brothers & Co. v. Curtis Brown Co. 260 U.S. 516, 43 S.Ct. 170, 67 L.Ed. 372; James-Dickinson Farm Mortgage Co. v. Harry, 273 U.S. 119, 47 S.Ct. 308, 71 L.Ed. 569; Caledonian Coal Co. v. Baker, 196 U.S. 432, 25 S.Ct. 375, 49 L.Ed. 540. Of course, the applicability of that rule, presupposes the negation of the foreign corporation's doing of business within the visited state; and that is the subject of the court's remaining consideration.

The initial act, in point of time, charged against the defendant does not involve it in the doing of business within Nebraska. For it is held that the mere making by a foreign corporation of a purchase or of purchases within a state, though such purchase or purchases be of the capital stock of a corporation domiciled therein, is not doing business in the state wherein the purchase is made. Conley v. Mathieson Alkali Works, 190 U.S. 406, 23 S.Ct. 728, 47 L.Ed. 1113; Rosenberg Brothers Co. v. Curtis Brown Co., supra; St. Louis Wire-Mill Co. v. Consolidated Barb-Wire Co., C.C.E.D.Mo., 32 F. 802; Hutchinson v. Chase & Gilbert, 2 Cir., 45 F.2d 139; and, (without reference to a stock purchase, but none the less in point) Pitzer v. Stifel, Nicolaus & Co., 143 Neb. 394, 9 N.W.2d 495.

Nor does the other somewhat individualized act attributed to the defendant constitute doing business. This has reference to its leasing to Brush Company of the machines purchased by and belonging to it. The ownership and leasing of property within a state by a nonresident corporation is not enough to warrant the conclusion that it is doing business in the state where such property is located. And that rule has been applied, alike in respect of real and of personal property. Philadelphia & Reading Railway Co. v. McKibbin, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710; Caledonian Coal Co. v. Baker, supra; United States v. American Bell Telephone Co., C.C.S.D.Ohio, 29 F. 17; United States Rubber Co. v. Query, D.C.S.C., 19 F.Supp. 191. It may be noted at this point that the only use or employment of the machines within the state of Nebraska that is even charged in the showings in this case is that made by Brush Company in the course of its regular manufacturing business.

There remains the relatively continuous relationship of the defendant to and through Brush Company which was itself actively engaged in business in Nebraska, in the same business, incidentally, which it transacted before, and at the time of, the acquisition of its capital stock by the defendant. The extent of that relationship and the activities in behalf of the defendant which it involved have already been enumerated. The court is satisfied that not any one of those activities, nor all of them in the aggregate, nor the intercorporate relationship to which they are attributable, involve the defendant in the doing of business in Nebraska.

The transaction of business within a state by one of its corporations whose stock is owned by a foreign corporation is

136

not necessarily or usually the doing of business within the state by the latter. Peterson v. Chicago, R. I. & P. R. Co., 205 U.S. 364, 27 S.Ct. 513, 51 L.Ed. 841; Caledonian Coal Co. v. Baker, supra. This is true even though the parent foreign corporation dominates the operating domestic subsidiary through its stock ownership. Cannon Manufacturing Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. 250, 69 L. Ed. 634; Conley v. Mathieson Alkali Works, supra; Peterson v. Chicago, R. I. & P. R. Co., supra; People's Tobacco Company, Ltd., v. American Tobacco Company, 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587, Ann.Cas.1918C, 537; Consolidated Textile Corporation v. Gregory, 289 U.S. 85, 53 S. Ct. 529, 77 L.Ed. 1047. And in that connection interorganizational activity by the parent corporation in respect of its operating subsidiary is not, alone, ground for the conclusion that the former is doing business in the state of the latter's incorporation. Cannon Manufacturing Co. v. Cudahy Packing Co., supra; Hurley v. Wells Newton National Corp., D.C.Conn., 49 F.2d 914; Walker v. Ritter-Burns Lumber Co. D.C.Ky., 10 F.Supp. 804.

Further authorities fortifying the legal conclusions noted in the last preceding paragraph might be assembled in large number from both federal and state sources. But it is believed that their accumulation could serve no practical purpose. Nor will quotation at length from those cited be undertaken. However, their reach and that of the opinions actually cited may well be appraised from the following language of Mr. Justice Brandeis in the opinion of the court in Cannon Manufacturing Co. v. Cudahy Packing Co., supra (see 267 U.S. at pages 334, 335, 336, 337, 45 S.Ct. at page 250, 69 L.Ed. 634):

"The main question for decision is whether, at the time of the service of process, defendant was doing business within the state in such a manner and to such an extent as to warrant the inference that it was present there. Bank of America v. Whitney Central National Bank, 261 U.S. 171, 43 S.Ct. 311, 67 L.Ed. 594. In order to show that it was, the plaintiff undertook to establish identity pro hac vice between the defendant and the Alabama corporation. The Alabama corporation, which has an office in North Carolina, is the instrumentality employed to market Cudahy products within the state; but it does not do so as defendant's agent. It buys from the defendant and sells to dealers. In fulfillment of such contracts to sell, goods packed by the defendant in Iowa are shipped direct to dealers, and from them the Alabama corporation collects the purchase price. Through ownership of the entire capital stock and otherwise, the defendant dominates the Alabama corporation, immediately and completely, and exerts its control both commercially and financially in substantially the same way, and mainly through the same individuals, as it does over those selling branches or departments of its business not separately incorporated which are established to market the Cudahy products in other states. *The existence of the Alabama company as a distinct corporate entity is, however, in all respects observed. Its books are kept separate. All transactions between the two corporations are represented by appropriate entries in their respective books in the same way as if the two were wholly independent corporations. This corporate separation from the general Cudahy business was doubtless adopted solely to secure to the defendant some advantage under the local laws.*

"The objection to the maintenance of the suit is not procedural—as where it is sought to defeat a suit against a foreign corporation on the ground that process has been served upon one not authorized to act as its agent. Pennsylvania Lumbermen's Mutual Fire Insurance Co. v. Meyer, 197 U.S. 407, 25 S.Ct. 483, 49 L.Ed. 810; St. Louis Southwestern Ry. Co. v. Alexander, 227 U.S. 218, 226, 33 S.Ct. 245, 57 L.Ed. 486, Ann.Cas.1915B, 77. See Philadelphia & Reading Ry. Co. v. McKibbin, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710. The obstacle insisted upon is that the court lacked jurisdiction because the defendant, a foreign corporation, was not within the state. No question of the constitutional powers of the state, or of the federal government, is directly presented. The claim that jurisdiction exists is not rested upon the provisions of any state statute or upon

any local practice dealing with the subject. The resistance to the assumption of jurisdiction is not urged on the ground that to subject the defendant to suit in North Carolina would be an illegal interference with interstate commerce. Compare International Harvester Co. v. Kentucky, 234 U.S. 579, 587–589, 34 S.Ct. 944, 58 L.Ed. 1479. The question is simply whether the corporate separation carefully maintained must be ignored in determining the existence of jurisdiction.

"The defendant wanted to have business transactions with persons resident in North Carolina, but for reasons satisfactory to itself did not choose to enter the state in its corporate capacity. It might have conducted such business through an independent agency without subjecting itself to the jurisdiction. Bank of America v. Whitney Central National Bank, 261 U.S. 171, 43 S.Ct. 311, 67 L.Ed. 594. It preferred to employ a subsidiary corporation. Congress has not provided that a corporation of one state shall be amenable to suit in the federal court for another state in which the plaintiff resides, whenever it employs a subsidiary corporation as the instrumentality for doing business therein. Compare Lumiere v. Mae Edna Wilder, Inc., 261 U.S. 174, 177, 178, 43 S.Ct. 312, 67 L.Ed. 596. That such use of a subsidiary does not necessarily subject the parent corporation to the jurisdiction was settled by Conley v. Mathieson Alkali Works, 190 U.S. 406, 409–411, 23 S.Ct. 728, 47 L.Ed. 1113; Peterson v. Chicago, Rock Island & Pacific Ry. Co., 205 U.S. 364, 27 S.Ct. 513, 51 L.Ed. 841; and People's Tobacco Co., Ltd., v. American Tobacco Co., 246 U.S. 79, 87, 38 S.Ct. 233, 62 L.Ed. 587, Ann.Cas. 1918C, 537. *In the case at bar, the identity of interest may have been more complete and the exercise of control over the subsidiary more intimate than in the three cases cited, but that fact has, in the absence of an applicable statute, no legal significance. The corporate separation, though perhaps merely formal, was real. It was not pure fiction.*" (Emphasis added)

In evaluating the foregoing extended quotation, it may be understood that the defendant there identified was a Maine corporation having a similarly named, and wholly owned, Alabama subsidiary which had and operated a place of business in North Carolina, in which state the action originated.

Likewise here, the Nebraska corporation's identity was preserved as a reality, not as a fiction or device. Its business and operations were kept separate and distinct from those of the defendant. Its corporate history was made, and its records maintained, its meetings both of stockholders and of directors had in Nebraska. Finally, there is no evidence which persuades, or even forcibly suggests to, the court that there was any lack of good faith on the part of the defendant in its relations with the Brush Company. It merely chose, after its acquisition of Brush Company's corporate stock, to allow the Nebraska corporation to retain its existence and persist in the conduct of its business, and not to enter into Nebraska to transact business on its own account. (The factual recitals of this paragraph shall be understood as express findings by the court.)

The conclusion of the court, therefore, is that the defendant *never was—and never did or transacted business*—in Nebraska. It necessarily follows that it was not suable in Nebraska in an action strictly in personam, and that the attempted service upon it of process in this action was void.

Obviously, that conclusion does not reach the question whether the plaintiff has or states a claim against the defendant on which relief may be granted in an appropriate forum. Nor need it do so. Rosenberg Brothers & Co. v. Curtis Brown Co., supra. The existence of a valid claim and the appropriate court for its vindication are two separate and not necessarily related questions. And, since the defendant has not done business in Nebraska, the discussion and ruling in Yoder v. Nu-Enamel Corporation, 140 Neb. 585, 300 N.W. 840 (dealing with the amenability to suit and process of a foreign corporation formerly but not at the time of service engaged in business in Nebraska, where the claim arises out of business done in the state), have no present pertinence. The necessity of that conclusion receives special emphasis from the explicit averments of

138

the plaintiff's petition or complaint in which he rests his claim upon the alleged conversion by the defendant of his shares of stock in Brush Company rather than on contract. Any such conversion which may have occurred undoubtedly took place in New York or Connecticut. At least, it is not even alleged to have been done in Nebraska; and any possible supposition to that effect is rather repelled by the language of the complaint from which it may be inferred—although it is not definitely stated in the pleading—that notice of the conversion was given to the plaintiff by the defendant's president through correspondence.

An order is being entered sustaining the "Special Appearance", appraised as a motion to dismiss, and dismissing the action for want of jurisdiction and invalidity of the service of process.