# IN THE COURT OF APPEALS OF IOWA

————————————

No. 25-0975
Filed May 13, 2026

————————————

**State of Iowa,**
Plaintiff–Appellee,

v.

**Christopher Wayne Beamer,**
Defendant–Appellant.

————————————

Appeal from the Iowa District Court for Scott County,
The Honorable Meghan Corbin (motion to suppress) and the Honorable
Jeffrey C. McDaniel (sentencing), Judges.

————————————

**AFFIRMED**

————————————

Martha J. Lucey, State Appellate Defender, and Bradley M. Bender,
Assistant Appellate Defender, attorneys for appellant.

Brenna Bird, Attorney General, and Genevieve Reinkoester, Assistant
Attorney General, attorneys for appellee.

————————————

Considered without oral argument
by Schumacher, P.J., and Ahlers and Badding, JJ.
Opinion by Schumacher, P.J.

1

**SCHUMACHER, Presiding Judge.**

Following his convictions for possession with intent to deliver a schedule II controlled-substance, in violation of Iowa Code section 124.401(1)(c)(6) (2022) and operating while intoxicated (OWI), first offense, in violation of section 321J.2(a), Christopher Beamer appeals, claiming the district court erred in denying his motion to suppress evidence following a search of his vehicle. Beamer also challenges the sentence imposed by the court. We review his constitutional claim de novo, *State v. Harbach*, 3 N.W.3d 209, 217 (Iowa 2024), and his sentencing challenges for abuse of discretion, *State v. Schooley*, 13 N.W.3d 608, 616 (Iowa 2024).

## MOTION TO SUPPRESS

Shortly after 7:00 a.m. on November 16, 2022, a Bettendorf police officer responded to a head-on collision in which Beamer's vehicle crossed the center line and struck another vehicle. The other driver reported, "He just came into my lane." The officer observed no inclement weather conditions that could have caused the accident. The officer further noted the accident occurred near a school, "a pretty unusual location and . . . time of day to have an accident of that circumstance." Fire and medical teams were dispatched to the scene, and there was a significant amount of damage to the vehicles. The officer observed Beamer sitting in the driver's seat of his vehicle with his legs hanging out the door. Beamer stated he was "trying to get home," which the officer felt was "odd" because he was "going the opposite direction of his house." The officer did not smell alcohol on Beamer, but he noted that Beamer's speech "was very slow," "a little slurred; problems kind of opening his mouth and speaking," which he opined was "[c]onsistent with impairment."

The officer learned that police "had just dealt with [Beamer] the night before" on a call for a fire at Beamer's residence in his bedroom. During that investigation, Beamer admitted he was "a regular meth user" and drug paraphernalia—a glass pipe with residue—was found in plain view.

Beamer was transported to a hospital, where the officer interviewed him about the accident. Beamer admitted to drinking alcohol "earlier that day,"[1] but he didn't respond to an inquiry about drug use. In contrast to his initial statement, Beamer reported that he was driving to a relative's house. Beamer's responses were "incoherent" and "slurred," and his pupils were "constricted," which led the officer to believe that "he was impaired, either under the influence of alcohol or drugs." Beamer would not give a proper breath sample. Based on his training and experience, the officer opined there was probable cause to apply for a warrant to search Beamer's vehicle, which was executed.[2] Packages of methamphetamine were found in the vehicle.

Beamer moved to suppress the evidence found in his vehicle and his statements, claiming the officer's warrant application relied on evidence that did not have a nexus with the area to be searched, namely, Beamer's admission to being a regular meth user and Beamer "having an (empty) glass pipe at his home" the night before the accident. The district court concluded:

> Here, the Court interprets the Defendant's Motion as attacking the probable cause for the warrant. Essentially, Defendant is arguing that the State impermissibly used the contraband found in his home as a lever to secure a warrant for his vehicle.
>
> . . . .

---

[1] Beamer also told a fire medic at the scene that he had been drinking earlier.

[2] Police also obtained a warrant for a blood draw. Beamer's blood tested positive for methamphetamine and amphetamine.

The judge who issued the warrant had before him the following facts (exclusive of the meth pipe): Mr. Beamer had been in a serious car accident; he had admitted to drinking "earlier"; he had shown physical manifestations of impairment, including droopy eyes, persistent sleepiness, slurred speech, and pupil constriction; and he had stated earlier that morning that he was a "regular meth user." Taken together these facts amply support an inference that Mr. Beamer was operating under the influence either of alcohol (he admitted at approximately 7:11 a.m. that he had been drinking "earlier") or of illegal narcotics (he admitted at about midnight on the day in question that he was a "regular meth user"). Moreover, the warrant application is not solely focused on meth paraphernalia, it also states, "Your Affiant believes that he has shown probable cause that a search of the vehicle . . . will yield open alcoholic beverages . . . ." Altogether, the warrant application provides probable cause to justify issuing a warrant for Mr. Beamer's vehicle.

. . . .

Here, the police report containing Mr. Beamer's admissions that he was "a regular meth user" could not alone support a finding of probable cause. When it comes to search warrant applications, a brick is not a wall: a piece of evidence in isolation may not be enough to support a finding of probable cause, but cumulative evidence can. Alone, the report containing Beamer's admissions could not support a finding of probable cause, but it certainly bolsters [the officer]'s suspicion that Mr. Beamer was impaired at the time of the accident.

(Citation footnotes omitted).

Upon our review of the record, we affirm the district court's denial of the motion to suppress and affirm Beamer's convictions without further opinion pursuant to Iowa Court Rule 21.26(1)(a), (d), and (e).

## SENTENCING CHALLENGES

Beamer also challenges the sentence imposed by the district court. On the controlled-substance charge, the court sentenced Beamer to a term of incarceration not to exceed ten years, suspended the sentence, and placed

Beamer on probation for three years. On the OWI charge, the court sentenced Beamer to sixty days in jail. The court also ordered Beamer to pay victim restitution.

Because Beamer's sentence falls within the statutory limit, there is "a strong presumption in its favor." *State v. Damme*, 944 N.W.2d 98, 105–06 (Iowa 2020). A sentence "will only be overturned for an abuse of discretion or the consideration of inappropriate matters." *State v. Wilbourn*, 974 N.W.2d 58, 65 (Iowa 2022) (citation omitted).

## I.    Right of Allocution

Beamer first claims the district court erred in not granting him the right of allocution before sentencing, as required by Iowa Rule of Criminal Procedure 2.23(2)(b), (d)(2)–(3). At sentencing, the prosecutor, defense counsel, and Beamer appeared personally. After defense counsel provided Beamer's sentencing recommendation, the following colloquy took place:

> COURT: Okay. . . . [Defense counsel], does your client wish to address the Court at this time, before the Court imposes sentence and judgment?
>
> (An off-the-record discussion was held between counsel and the defendant.)
>
> DEFENSE COUNSEL: My client does not wish to address the Court, Your Honor.
>
> COURT: Very good.
>
> [Prosecutor], what is your recommendation?

In determining whether the court has provided a defendant their opportunity for allocution, "[n]o special language is required to fulfill the rule's mandate," and the question "is whether the defendant is given an opportunity to volunteer any information helpful to the defendant's cause."

*State v. Lumadue*, 622 N.W.2d 302, 304 (Iowa 2001) (cleaned up). Substantial compliance is met if the record establishes that the court "invited, or afforded an opportunity for the defendant to speak regarding punishment." *Id.* (cleaned up). Here, the court asked whether Beamer wished to make any statements as the court considered his ultimate sentence. *See State v. Oo*, No. 22-0661, 2023 WL 4104028, at *2 (Iowa Ct. App. June 21, 2023). "[B]y asking his attorney whether [Beamer] wanted to make any statement, the court invited [Beamer] to speak." *See State v. Hernandez*, No. 23-1462, 2024 WL 4615629, at *2 (Iowa Ct. App. Oct. 30, 2024). Beamer's claim that he was denied allocution is unpersuasive.

## II.    Reasons for Sentence Imposed

Beamer next claims the court "abused its discretion by failing to provide adequate reasons for imposing the suspended sentence as part of Beamer's sentence on [the controlled-substance charge]" "rather than granting his request for a deferred judgment." Although the sentencing court is "required to state on the record its reason for selecting the particular sentence," it is "not obligated to give its reasons for rejecting particular sentencing options." *Wilbourn*, 974 N.W.2d at 67 (cleaned up). Here, during the sentencing hearing, the district court recited the following reasons for the sentences imposed:

> So, Mr. Beamer, it's my duty under the law to review what is available to me in terms of community resources and to determine what the appropriate rehabilitative plan is for you, and also consider that the public must be protected. In doing so, I look at the seriousness of the crime, the effect that the crime has had upon members of the community, your willingness to accept change and treatment, and what is available in this community to assist you in that process. Throughout my entire thought process I start with the least restrictive alternative first before moving on to the more restrictive alternative.

The Court has reviewed the presentence investigation report [(PSI)] and has considered the information contained within that report; however, the Court has not considered the criminal history section to the extent that it does not reveal either an admission or adjudication of guilt.

The Court has considered the statements of counsel for the defense and for the State, as well as the PSI; notes that the PSI author recommends probation. That was a substantial factor, among other things, in considering this decision of the Court.

A couple of observations: Oftentimes, Mr. Beamer, the reason people find themselves in the court system is because they do not have stable income, and when they do not have stable income, they have idle hands. And we know the adage about idle hands being the devil's workshop. So employment for people that can be employed, it's always a good thing.

What I noticed for you is that the PSI author indicated you had a lack of stable income. The PSI author also indicated that you had been living with your . . . aunt and an uncle for housing. And as you sit here, at age fifty-two, that probably is not going to be a permanent solution for you. So not working leads to a lack of income, a lack of income leads to an inability to afford housing, which sometimes can lead to an unfortunate decision-making process.

So I'm going to share with you a quick story. So years ago I was acquainted with somebody who worked in a person's house, cleaning their house. And they did it for cash. Did it for cash. We're not going to pay taxes to the federal government; we're not going to pay taxes to the state government; we're not going to pay payroll taxes; we're not going to pay unemployment taxes. And this continued for about ten years, until this person approached their late fifties or early sixties and their body gave way, and they were no longer able to work. That person, because they were working for cash, didn't pay unemployment taxes, didn't pay social security disability, FICA, Medicare/Medicaid sort of things. When they couldn't work, they had no income. They couldn't apply for social security disability because they had no income.

And I know that's not exactly your situation, but you have worked for cash on and off, apparently, over the years. But my genuine concern comes out of the fact that a person who works for cash and does not file

income taxes and does not pay FICA, social security sort of taxes, down the line when their body gives out, they don't have disability or they don't have the full, sort of, social security retirement benefits that they kind of expect. So I don't want you to find yourself in that situation.

I'm going to have some terms of probation that are going to be responsive, I think, to these economic concerns. And I say that because I want the best for you. I want you to be in a position down the line so that you can be successful, as well as in the short term.

I am going to accept the recommendation of the parties and the PSI author and will conclude that probation is the best step for you, as well as for the community.

. . . .

The seriousness of the crime is such that a vehicle was totaled, the seriousness of the crime is that two people could have lost their lives that morning. We're glad that didn't happen, but obviously, it's a serious event.

. . . .

Conditions of probation. . . . You are to take, Mr. Beamer, the victim impact class that's offered through the QCA Labor-Management Council and successfully complete that. And supervision will be through the Seventh Judicial District Department of Corrections. You are to undergo a substance-abuse evaluation and follow and complete any recommended treatment. I think all of the attorneys understand that the CADS evaluation may be less thorough than can otherwise be provided through probation. You are to undergo a mental-health evaluation and follow any recommended treatment to the extent that mental-health issues affect your ability to make good decisions. You are to abstain from any controlled substances. You are to abstain from alcohol. You are to obtain and maintain employment. And that's W-2 employment, unless you can provide proof that you are paying payroll taxes and you are paying state and federal income taxes. And I hope that you will agree in the end that that's the best way for you to secure a firm financial future. And I'm sure that your probation officer will be able to assist you in finding meaningful employment that meets those criteria.

Beamer acknowledges that the court "need not give specific reasons for rejecting a sentencing option," but he claims "[t]he record contains no acknowledgment by the district court that Beamer sought a deferred judgment on [the controlled-substance] charge." We disagree. Defense counsel specifically requested the court enter "a deferred judgment and minimum civil penalties." *See State v. Lavenz*, No. 21-1062, 2023 WL 1814289, at *4 (Iowa Ct. App. Feb. 8, 2023) (observing the defendant failed to show the sentencing court was unaware it could suspend the sentences where defense counsel told the court the defendant agreed with the recommendation in the PSI to suspend the sentences).

Contrary to Beamer's claim, there was no misunderstanding about the sentencing options, and the court provided adequate reasons for the sentence imposed. *See State v. Crooks*, 911 N.W.2d 153, 171 (Iowa 2018). We affirm on this issue.

## III. Unreasonable Probation Requirement

Beamer also argues the court imposed an unreasonable probation requirement by ordering "that he obtain and maintain W-2 employment." Beamer's argument ignores some of the details of this probation condition, specifics of which are detailed above. As noted, the court did not limit Beamer only to W-2 employment; it permitted him to have other forms of employment for which he could "provide proof that [Beamer was] paying state and federal income taxes." We further note that the PSI noted that Beamer "has lived with the support of his relatives for a significant portion of his adult life" and opined Beamer "needs to secure and maintain gainful employment."

"Probation is a set of conditions exacted by a court of law as a consequence for the defendant's criminal conduct." *State v. Jepsen*, 907

N.W.2d 495, 502 (Iowa 2018). The sentencing court is "authorized to impose any reasonable conditions that either promote rehabilitation of the defendant or the protection of the community." *State v. Valin*, 724 N.W.2d 440, 445–46 (Iowa 2006) (cleaned up). "In trying to achieve that goal, district courts routinely require employment as a condition of probation." *State v. Edwards*, No. 24-1988, 2026 WL 521493, at *1 (Iowa Ct. App. Feb. 25, 2026) (citing cases). Here, the requirement that Beamer maintain employment "to secure a firm financial future" was reasonable and promotes Beamer's rehabilitation. *See id.*; *see also State v. West Vangen*, 975 N.W.2d 344, 355 (Iowa 2022) ("The sentencing court has broad discretion to impose the sentence it determines is best suited to rehabilitate a defendant and protect society."). Finding no abuse of discretion, we affirm the court's sentencing decision.

**AFFIRMED.**