INTERMOUNTAIN FORD TRACTOR SALES COMPANY, a Corporation; Cassia Equipment Co., a Corporation, Elliotts Inc., a Corporation, Chisholm Brothers Farm Equipment Co., a Corporation, and Charles W. Bullen, doing business as Bullen Farm Equipment Company, Plaintiffs,

v.

MASSEY–FERGUSON LIMITED, a Corporation; Massey-Ferguson, Inc., a Corporation; Massey-Ferguson Finance Company of Canada, Limited, a Corporation; and Massey-Ferguson Finance Corporation, a Corporation, Defendants.

No. C 160–61.

United States District Court
D. Utah,
Central Division.

Nov. 9, 1962.

Rawlings, Wallace, Roberts & Black, Salt Lake City, Utah, Joseph L. Alioto, San Francisco, Cal., for plaintiffs.

Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah, for defendants.

CHRISTENSEN, District Judge.

The plaintiffs are retail farm equipment dealers doing business in Idaho and Utah.

The defendant Massey-Ferguson Inc. is a Maryland corporation qualified to do business in most states of the United States, including Utah. It manufactures and distributes farm and industrial equipment and operates certain company stores in Utah and Idaho which are involved in plaintiffs' claim. Massey-Ferguson Finance Corporation, a Maryland corporation, is a wholly owned subsidiary of Massey-Ferguson Inc. The home offices of both Massey-Ferguson Inc. and Massey-Ferguson Finance Corporation are in Detroit, Michigan, although their principal officers reside in Canada. Massey-Ferguson Limited is a corporation organized under the laws of Canada. It is a manufacturer and supplier of farm and industrial equipment and owns all of the stock of Massey-Ferguson Inc. Massey-Ferguson Finance Company of Canada Limited is a subsidiary of Massey-Ferguson Limited. Neither of the Canadian companies is qualified to do business in the United States.

The plaintiffs charge in this suit that defendants have attempted to monopolize, and have entered into a combination and conspiracy to restrain and monopolize, trade in agricultural and industrial equipment to plaintiffs' damage, in violation of Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1, 2) and Section 2(a) of the Clayton Act (15 U.S.C. § 13(a)).

Massey-Ferguson Limited and Massey-Ferguson Finance Company of Canada Limited, appearing specially for the purpose have moved the court to dismiss the action and quash the return of service of summons as to each, upon the grounds that neither defendant was an inhabitant of, or found or transacting business within, the district of Utah,

and that it is not subject to suit nor to service of process within this district.

The motions obviously are well taken as to Massey-Ferguson Finance Company of Canada Limited, and therefore are granted without further discussion.

Massey-Ferguson Inc. as indicated is the solely owned subsidiary of Massey-Ferguson Limited. Except for three circumstances to be discussed hereinafter, the relationship between this parent company and its subsidiary appears substantially the same as that which was found to exist between Cudahy Packing Company, a Maine corporation, and Cudahy Packing Company of Alabama in Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. 250, 251, 69 L.Ed. 634.[1] In the absence of distinguishing circumstances the decision in the Cudahy case could well be controlling here against the plaintiffs' position.

Plaintiffs, however, advance three contentions which are said to preclude application of the Cudahy doctrine: (1) that the Canadian corporation was directly doing business within the district of Utah because as shipper it sent goods into the state which were directed not to its subsidiary as the purchaser but to the stores operated by the subsidiary or to other dealers; (2) that it entered into a conspiracy with its subsidiary either within the district or having an impact within the district and thus "transacted business" here; and (3) the Canadian company by commingled

control was actually present in the district and transacted business here through its wholly owned subsidiary within the contemplation of 15 U.S.C. § 22. These contentions will be examined in order.

■ There is no merit to the claim that because shipping documents covering equipment sold by the Canadian company to its subsidiary showed the Canadian company to be the "shipper" and because on occasion the equipment went directly to the local stores or the customers of the subsidiary, the Canadian company itself was transacting business directly in the district of Utah. The evidence indicates that property shipped into Utah by the Canadian company was sold prior to shipment to the subsidiary and that shipments were made as directed by the latter. Ordinary business practices completely removed from the local scene could not be so magnified in their supposed local effect without subjecting almost every foreign manufacturer to the consequences of local operations merely because their products eventually reach local dealers or consumers. The most loose concept of liberalized venue and service requirements would not countenance such result. And besides, as I read the Cudahy case a similar argument was clearly rejected there.

■ On the second point, plaintiffs call attention to language in United States v. Scophony Corporation, 333 U.S. 795, 68 S.Ct. 855, 862, 92 L.Ed. 1091 (1948) [2] on the basis of which they urge

---

1. "The Alabama corporation, which has an office in North Carolina, is the instrumentality employed to market Cudahy products within the state; but it does not do so as defendant's agent. It buys from the defendant and sells to dealers. In fulfillment of such contracts to sell, goods packed by the defendant in Iowa are shipped direct to dealers, and from them the Alabama corporation collects the purchase price. Through ownership of the entire capital stock and otherwise, the defendant dominates the Alabama corporation, immediately and completely, and exerts its control both commercially and financially in substantially the same way, and mainly through the same indi-

viduals, as it does over those selling branches or departments of its business not separately incorporated which are established to market the Cudahy products in other states. The existence of the Alabama company as a distinct corporate entity is, however, in all respects observed. Its books are kept separate. All transactions between the two corporations are represented by appropriate entries in their respective books in the same way as if the two were wholly independent corporations. * * *"

2. "Thus, by substituting practical, business conceptions for the previous hairsplitting legal technicalities encrusted

that the charged conspiracy itself sufficiently would constitute the transaction of business within the district as to afford venue and permit service of process. This view is supported more or less by the following authorities cited by plaintiffs' counsel: Giusti v. Pyrotechnic Industries, 156 F.2d 351 (9 Cir. 1946); Steiner v. 20th Century-Fox Film Corporation, 232 F.2d 190 (9 Cir. 1956); R. J. Coulter Funeral Home v. National Burial Ins. Co., 192 F.Supp. 522 (D.C. Tenn.1960); DeGolia v. Twentieth Century-Fox Film Corporation, 140 F.Supp. 316 (D.C.Cal.1953); and Ross-Bart Port Theatre, Inc. v. Eagle Lion Films, Inc., 140 F.Supp. 401 (D.C.Va.1954); cf. Bankers Life & Casualty Co. v. Holland, 346 U.S. 379, 74 S.Ct. 145, 98 L.Ed. 106 (1953); and Bertha Building Corp. v. National Theatres Corp., 248 F.2d 833 (2 Cir. 1957). The Giusti thesis to the effect that a conspiracy entered into or having impact within a particular district itself could sustain venue in that district under the antitrust laws is not impressive.[3] I cannot reconcile the broad but yet limited statutory rules on venue and service[4] with the idea that in effect there are no limitations as to venue and service in antitrust matters so long as the action is brought where a conspiracy was entered into or resulting damages occurred. Nor can I accede to the proposition advanced by the plaintiffs on the basis of DeGolia v. Twentieth Century-Fox Film Corporation, supra, that since the defendants' possible participation in the conspiracy cannot be

ascertained before trial, and as such participation will determine whether defendants are doing business in the state, the plaintiff's complaint should not be dismissed nor process quashed at this stage but should a trial of the issues fail to establish defendants' participation in the alleged conspiracy, defendants may apply for appropriate relief. That would mean that as to every alleged conspiracy, irrespective of any other suggestion of venue, a case could proceed against a foreign corporation with the same effect as if venue were properly laid, until at least the time of trial, and that the validity of service of process and the propriety of the venue would vary according to the final decision on the merits. It is my opinion that the statute does not contemplate that a conspiracy having impact within the district shall itself constitute the transacting of business for venue purposes nor could the defendant be considered as "found" within the district for the purpose of service of process merely by reason of such a conspiracy.

No cases have been cited nor have I discovered any closely reading upon the third point, but established principles essential to a decision are reflected in Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1929); United States v. Scophony Corporation, 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091 (1948) supra; United States v. National City Lines, 334 U.S. 573, 68 S.Ct. 1169, 92 L.Ed. 1584 (1948); People's Tobacco Co. v.

upon the 'found'-'present'-'carrying-on-business' sequence, the Court yielded to and made effective Congress' remedial purpose. Thereby it relieved persons injured through corporate violations of the antitrust laws from the 'often insuperable obstacle' of resorting to distant forums for redress of wrongs done in the places of their business or residence. A foreign corporation no longer could come to a district, perpetrate there the injuries outlawed, and then by retreating or even without retreating to its headquarters defeat or delay the retribution due."

3. While expressions in Bankers Life & Casualty Co. v. Holland, supra, may be in a sense dicta, both the majority and the dissenting justices seem agreed that the Giusti theory is wrong.

4. Section 12 of the Clayton Act (15 U.S.C. § 22) provides: "Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found."

American Tobacco Co., 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587; Curtis Publishing Company v. Cassel, 302 F.2d 132 (10 Cir. 1962).

Massey-Harris-Ferguson, Limited v. Boyd, 242 F.2d 800 (6 Cir. 1957) is not of much help; recognized limitations of the remedy of mandamus precluded an authoritative decision upon the question with which we are concerned. On the other hand, the case apparently did not touch upon the effect of the "North American Operations Unit" hereinafter mentioned. It is true that the district judge ruled that for all intents and purposes there was only one corporation, the parent Canadian corporation, with the American company and affiliates being its adjuncts or instrumentalities, and that the activities and operations of the Canadian corporation were a continuous course of business of a substantial character within the Western District of Tennessee. But this ruling, if not inferentially questioned in the Court of Appeals, certainly was not confirmed.

In the latter connection, there is evidence before me which raises a serious question whether the formal segregation of operations between the Canadian parent corporation and its American subsidiary has not been overriden by a device which the companies in common adopted apparently in an effort to avoid the normal operational consequences and limitations of that very separation.

The affidavit of A. A. Thornbrough, in support of defendants' motion to quash service of process, sets out some basic facts concerning the integrated control of the two corporations,[5] from which he concludes that the Canadian company officers in connection with the "North American Operations" concern themselves "exclusively with advising, consulting and coordinating the worldwide activities of Massey-Ferguson Limited and its subsidiaries," and "do not in fact exercise any direct operational control or authority over North American Operations or over Massey-Ferguson Inc. which carries on all business in the United States." Mr. Thornbrough is President of Massey-Ferguson Limited and is also a director of Massey-Ferguson Inc., the wholly owned subsidiary.

5. It is shown by Mr. Thornbrough's affidavit that there is physically located in Toronto, Canada, an organizational unit denominated for convenience "North American Operations". The function and purpose of this organizational unit is to coordinate the activities of Massey-Ferguson Inc. in the United States and of that part of Massey-Ferguson Limited which carries on similar business activities in Canada. The President of Massey-Ferguson Inc., acts as general manager over the coordinating organization called "North American Operations". According to Mr. Thornbrough, although the manufacturing and sales activities in Canada and in the United States are coordinated through the general manager of North American Operations, his authority so far as Massey-Ferguson Inc. is concerned stems entirely from his position as President of Massey-Ferguson Inc. Massey-Ferguson Inc. reimbursed Limited in full for the amounts paid by Limited for services extended to Massey-Ferguson Inc. Employees who reside in Canada and who perform services partly for Massey-Ferguson Inc. and partly for that division of Massey-Ferguson Limited (which is claimed to be the Canadian counterpart of Inc.) are paid in Canadian funds by checks issued by Massey-Ferguson Limited. Thereafter Massey-Ferguson Inc. reimbursed Limited for that part of the amount paid which is properly allocable to services rendered on behalf of Massey-Ferguson Inc. Mr. Thornbrough alleges that prior to November 1959 the present autonomy of the North American Operations (including Massey-Ferguson Inc.) from the direction and authority of the corporate or staff authority of Massey-Ferguson Limited was not so clearly or definitely defined as at present. Prior to November 1959 some of the corporate or staff officers of Massey-Ferguson Limited participated to some extent in some of the decisions, policies and activities pertaining to North American Operations (including Massey-Ferguson Inc.). As of November 1959, however, Mr. Thornbrough states that a policy was instituted to re-align corporate management or staff officers and to disengage these officers from all direct operational authority over North American Operations, including Massey-Ferguson Inc. Since the date mentioned, this has been the fixed policy and practice of the company, from which to the personal knowledge of the affiant there had been no deviation.

Yet Mr. Thornbrough subsequently testified in his deposition that the "North American Operations" came into being on the first of November, 1959, and that about that time "generally the operations of the United States organization and the Canadian marketing activities were consolidated into an operational entity." Mr. Dworshak became vice-president of marketing of Massey-Ferguson Inc. and "also director of marketing for both the Canadian and the U. S. overall activities." At the present time Mr. Staiger is vice-president and general manager of North American Operations; also president of Massey-Ferguson Inc. and an officer of Massey-Ferguson Limited. Mr. Pomeroy is director of marketing for "North American Operations" and vice-president of marketing for Massey-Ferguson Inc. Despite the conceptual uncertainties of the "North American Operations", it is quite manifest from Mr. Thornbrough's deposition that as a practical matter the parent company through the "North American Operations" directs the detailed activities of the American company, including the operation of company stores in both Utah and Idaho. I think that the reason the "North American Operations" appeared so complex when an attempt was made to explain them [6] stemmed largely from failure to recognize that obvious control. This "North American Operations" appears to be not merely a council of officers from the respective corporations, each acting in separate capacities and with respect only to the particular corporation which he represents, but essentially another entity in which separate corporate functions are merged in many respects, employing as such numerous assistants and employees and often acting directly with subsidiary corporate activities rather than through the top management of the respective corporations. Mr. Staiger, president of Massey-Ferguson, Inc., and president of North American Operations testified on deposition that he reported directly to Mr. Thornbrough, president of Massey-Ferguson Limited, and that of the several hundred employees on the staff of North American Operations two-thirds were on the Canadian company's payroll.

6. (Cross examination of the witness Thornbrough on deposition)

"Q. I am frankly confused at this time. Does it follow from that that North American Operations in no way at all involve the Canadian Company?

"A. It does not involve the top management in Massey-Ferguson Limited.

"Q. Does it involve any kind of management whether it is top or otherwise?

"A. It involves what it says, North American Operations.

"Q. Since it involves what it says, namely North American Operations and since the company, Limited, that is Massey-Ferguson Limited, operates in North America, am I justified in concluding from that that Massey-Ferguson Limited performs activities which come under the general heading of North American Oprations?

"A. No. You are not justified in making that comment.

"Q. Would you be good enough to clear that up for me?

"A. Massey-Ferguson Limited in its parent company activities operates only in Canada. So far as the United States is concerned all operations are carried out by Massey-Ferguson, Incorporated.

"Q. Insofar as Massey-Ferguson Limited operates in Canada, nowhere else, but in Canada, does it come within the scope of what has been called the division or branch quote North American Operations end quote?

"A. That portion of a Massey-Ferguson Limited activities which are encompassed in the North American Operations would be performed in Canada.

"Q. They would be performed in part by Mr. Staiger?

"A. As general manager of the North American Operation, yes.

"Q. Now would they not also be performed in part by Mr. Pomeroy as a sales manager?

"A. As director of marketing for both the Canadian and North American activities.

"Q. Is it clear that Mr. Pomeroy and Mr. Staiger performed services that benefited both companies, that is, Limited and Inc., isn't that so?

"A. They carried responsibilities for Massey-Ferguson, Inc., and they also carried responsibilities for the operations in Canada as a part of the corporate entity of Massey-Ferguson Limited."

I cannot subscribe to the theory that direct and detailed control of a subsidiary by a parent corporation can be avoided in its detrimental consequence but utilized in its favorable effects by having the Canadian personnel from the parent company wear a hat labeled "subsidiary" when giving directives to the subsidiary on behalf of the parent company or on behalf of the joint management of such parent and subsidiary,[7] based upon decisions and policies actually made and transmitted to local operational personnel by the officers and directors of the parent company.

It must be recognized that plaintiffs' complaint centers around the company stores operated by Massey-Ferguson Inc.

7. The following colloquy occurred during oral argument:

"THE COURT: Now, North American Operations isn't a separate corporation?

"MR. McCARTHY: It is not. It's just an organizational unit, consisting of * * * two things. It consists of Massey-Ferguson Inc., and it consists of the comparable activities which are carried on by 'Limited' solely in Canada; namely, marketing and manufacturing, chiefly. They in effect think of it as three—that they in effect have three corporations, although in fact there isn't the division in 'Limited' that there is as far as 'Inc.' is concerned.

"THE COURT: Well, Mr. Alioto thinks they in fact think they have one * * *

"MR. McCARTHY: In their thinking, they have three. The three consist of, first, the holding company, Massey-Ferguson, Ltd., consisting of the corporate and staff officers, as they are referred to, which on a coordinating and consultative and advice basis, in effect supervised the worldwide affairs of Massey Ferguson, Ltd. But these same corporate or staff officers do not exercise any direct operational control or direction over the activities of North American Operations. North American Operations is run separate and apart from the corporate or staff officers of 'Limited,' and it is, as I say, it's in a different location, and it consists of a segment. In fact, a segment which in effect has been carved off of 'Limited,' a segment comparable in some respects to the activities of 'Inc.'

"THE COURT: Now, did this staff set up, promulgate, plaintiffs' Exhibit 2? (Retail Store Operations Manual)

"MR. McCARTHY: No. That's the Operations Manual. That's promulgated by North American Operations.

"THE COURT: Well, that's the staff?

"MR. McCARTHY: No. That's distinguished from what I referred to as the corporate or staff officers of 'Limited.'

"THE COURT: Well, it's an amalgamation of the two—

"MR. McCARTHY: As I said, they think of it as three entities. One is the corporate or staff officers, which is in a higher echelon of advice and so on, as to the worldwide operations. The operational group is North American Operations, which consists of 'Inc.,' consists of the top officers of Massey Ferguson, Inc., and comparable officers of 'Limited' * * *

"THE COURT: All right. But that combination * * *

"MR. McCARTHY: That is correct.

"THE COURT: Both 'Limited' and 'Inc.'?

"MR. McCARTHY: That is, it controls the operations of 'Inc.'—

"THE COURT: In its sphere?

"MR. McCARTHY: In its sphere, and it controls the operations of that portion of 'Limited' which does comparable business in Canada * * *

"THE COURT: Are each of the officers who take part in this North American * * * Operations—common officers of 'Inc.' and 'Limited'?

"MR. McCARTHY: They are officers of both, but not always in the same capacity. Mr. Staiger, for example, is president of Massey-Ferguson, Inc., and there is also a director of North American marketing activities, who is a vice president of Massey-Ferguson, Inc.—

"THE COURT: So when they approve this manual as it might affect the United States company, they are acting in their United States capacity—

"MR. McCARTHY: That is correct, your Honor.

"THE COURT:—and have that hat on. And then when they approve it in its other aspect, they are acting—

"MR. McCARTHY:—with that hat on. They are in effect coordinating the marketing and manufacturing activities for both Canada and for the United States, and they function in a capacity as an officer of 'Inc.' when it pertains to the United States, and they function in the capacity as an officer of 'Limited' in a limited sphere when they are approving it for Canadian activities."

in Utah and Idaho. It does appear that the overall plan governing or substantially affecting the level of prices in these stores, while originating locally, is ultimately passed upon approved and controlled by the so-called North American Operations. It also is shown that a detailed Manual of Operations governing the functioning of the local stores in not only broad, but in minute respects, is formulated and kept up to date by the North American unit and that some of the decisions governing the operation of local stores are referred to, and directly passed upon by, officers of the North American Operations pursuant to the Manual.[8] In this context, it may be deemed significant that not a single officer of the American subsidiary resides in the United States. Most of the principal officers of the American company are also officers or directors of the Canadian company, and generally speaking these common officers direct the "North American Operations".

I am not unmindful that common officers and directors ordinarily may not be regarded as demonstrating an unacceptable commingling of operations. But here they do not function at separate times and under separate circumstances with regard to the respective businesses. On the contrary, by the device of the North American Operations, common officers of both meet together at a higher echelon to afford common direction to all North American operations of the company, and to lay down detailed instructions concerning the operation of com-

pany stores. It should also be noted that the Canadian company for various services rendered to the subsidiary either directly or through the so-called North American Operations has made service charges against the subsidiary, totaling several million dollars.

In Cannon Mfg. Co. v. Cudahy Packing Company, supra, in holding that the parent company was not doing business through the subsidiary, the Supreme Court recognized that the parent company exerted its control both commercially and financially over the subsidiary and mainly through the same individuals as it did over those selling branches or departments of its business not separately incorporated. Has the separate identity of the two corporations been preserved here within the limits of that doctrine, or do the special circumstances pointed out above transcend permissible integration so as to require acceptance of the parent's control over the subsidiary as the direct channel by which the parent corporation is transacting business through its subsidiary in this district for the purposes of the Clayton Act. Has the amendment to the Clayton Act worked a liberalization of the Cudahy doctrine in favor of plaintiffs' position?

These questions combine to present a difficult decision on the facts of this particular case. I shall not assume to delineate the line between the permissible and impermissible integration of operations under all circumstances for the purposes of such a decision. It seems

8. Plaintiffs' Exhibit 2, "Retail Store Operations Manual-Massey-Ferguson" is issued by North American Procedures and Systems. The forward to the Manual states: "The Retail Store Operations Manual is the collection of authorized communications relating to the control, administration and coordination of Retail Store Operations within the North American Operations Unit * * * Each supervisor who receives this Manual is responsible for understanding and adhering to the practices and procedures contained herein and for taking the necessary steps to insure that personnel under his jurisdiction are informed of the policies and procedures governing their day-to-day activities within the company." The manual among other things provides that salaries in excess of $10,000 for store operations are to be "authorized by the vice president North American Operations * * *." Copies of personnel attendance records are to be forwarded to the "Personnel and Industrial Relations Department, North American Operations". The form for "Status and Salary Change" has a space for the approval of "Operations Unit Department Head", and the "North American office Services Manager" is responsible for providing record retention schedules as they develop.

sufficient in view of what already has been said to note my judgment that the Canadian company has transcended reasonable limits for insulation of its activities from the Utah operations; that the degree of direct control which it is shown to exert over the company stores in Utah and Idaho if exerted directly by itself would be in disregard of the corporate separation; and that it does not detract from accountability for it to operate through a "North American Operations" to effectuate that control, since it still is the dominant force through such unit upon the local situations in Utah and Idaho without the protection of separate corporate managements and functions.

■ What has been said relates primarily to the venue problem, my view being that the Canadian company's connection with the Utah operations on the present record clearly is sufficient to show that it "transacts business" here, as that concept is referred to in Section 12 of the Clayton Act and interpreted liberally in United States v. Scophony Corporation, 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091 (1948).

It remains to be determined specifically whether the connection of the Canadian company with the Utah operations is sufficient to sustain service of process which was accomplished purportedly upon it through officers and agents directly employed by the American company and conducting the business of the latter with reference to the company stores in Utah and Idaho, and generally.

The key question with regard to service of process seems to be not whether the foreign corporation merely "transacts business" but whether it may be "found" within the district, which involves beyond the minimal showing required for venue purposes something amounting, or at least more akin, to the "doing of business". 15 U.S.C. § 22, supra; Rule 4(d) (7), F.R.Civ.P.; Rule 4 (e) (4), Utah Rules Civil Procedure; United States v. Scophony Corporation, supra; People's Tobacco Co. v. American Tobacco Co., supra; Cannon Mfg. Co. v.

Cudahy Packing Co., supra; Banana Distributors v. United Fruit Company, S.D.N.Y., 158 F.Supp. 153 (1957); Terry Carpenter, Limited v. Ideal Cement Co., D.C.Neb., 117 F.Supp. 441 (1954); Lawlor v. National Screen Service Corp., D. Pa., 10 F.R.D. 123 (1950); Nagl v. Northam Warren Corporation, D.C.D. Neb., 8 F.R.D. 130 (1948); Berkman v. Ann Lewis Shops, S.D.N.Y., 142 F.Supp. 417 (1956).

■ Obviously the Canadian company is not an "inhabitant" of this district within the contemplation of the service requirements of Section 12 of the Clayton Act, 15 U.S.C. § 22. Was it "found" in either the districts of Utah, Idaho or Michigan where service of process was attempted through officers and agents of the American company? The question is a most difficult one, but I have concluded that it was, and, upon the theory of that conclusion, that the served officers of the American company were sufficiently the agents also of the Canadian company as to sustain the service of process and the return in question.

■ I think that my conclusion is not inconsistent with the principles of the above cited cases that a corporation is not amenable to suit in the federal court of another state merely because it employs and controls a wholly owned subsidiary corporation as an instrumentality for doing business there (Cudahy) and that for a contrary result the local business of the foreign corporation must be of such character as to warrant the inference that the foreign corporation has subjected itself to the local jurisdiction and that it is by its duly authorized officers and agents present within the district where service is attempted (People's Tobacco Co.). I think that my conclusion is in harmony with recognized qualifications to these general rules because the existence of the local company "as a distinct corporate entity" is not "in all respects" or even in major respects, "observed" (Cudahy); because in certain respects involving the control of local operations the American company was in fact "an 'agent', 'instrumentality'

or "dummy' of the parent corporation" (Terry Carpenter, Limited); because there was more than "[domination of] the operating domestic subsidiary through its stock ownership * * * and in that connection [more than mere] interorganizational activity by the parent corporation in respect of its operating subsidiary" (Nagl); and because far from being "clear that the separate identities of parent and subsidiary had been carefully preserved", (Berkman) it appears as to certain local operations of the American company that there was such an intermixture of operational control apart from the regular channels of corporate management as to obscure, if not entirely obliterate, the separation of corporate identities.

Moreover, if I am right that by reason of its North American Operations control the Canadian defendant actually is "transacting business" here, it would seem that a line could hardly be drawn between that concept and the "doing business" concept under the peculiar facts of this case. This is not to say that the "transacting business" idea is not narrower than the doing business concept by way of definition. But certain methods of transacting business which meet the former test also may meet the latter, and I think that the method of operation here must be one of these. Were it otherwise it might have to be accepted that a foreign corporation outside the United States could completely integrate its control and corporate functions with the corporate organization, direction and functioning of a United States subsidiary, disregarding abroad any real separation of functions except the most superficial and formal, and thus actually itself conduct day by day business in every detail within the United States, yet where service were attempted, withdraw with impunity beyond the national boundary. I cannot believe that Congress left such a loop-hole in the enforcement of the antitrust law. (See United States v. Scophony Corporation, supra). Perhaps it plugged such a hole by permitting some appropriate type of service, assuming venue is established, wherever a defendant corporation can be found, including its home office abroad. But by one means or another I believe that service of the Canadian corporation may be accomplished in such a case as this, and if I am in error in my conclusion that it has already been accomplished or if plaintiffs desire to reinforce their position, that they should be afforded in the interest of a complete determination a further reasonable opportunity to attempt to do so by service of process at the home office of the Canadian company.

Upon the merits of the plaintiffs' charges that the antitrust laws have been violated by the defendants I neither entertain nor express any opinion nor is my holding intended to be broader than the area of, or for any other purpose than, the precise questions before me.

The motions to dismiss and to quash return of service and service of process as to Massey-Ferguson Limited, the Canadian corporation, are denied.