Don FOOSHEE, d/b/a Fooshee Amusement Company, Plaintiff,

v.

INTERSTATE VENDING COMPANY, a corporation, Interstate Vending Company of Wichita, Inc., a corporation, Cigarette Service Company, Inc., a corporation, F. R. Solomon Vending Company, Inc., a corporation, F. R. Solomon, Arthur S. Stevens, N. S. Stevens, and Jameel G. Razook, Defendants.

Civ. A. No. W-3070.

United States District Court
D. Kansas.

Aug. 21, 1964.

Fettis & Allan, Jochems, Sargent & Blaes, Wichita, Kan., for plaintiff.

Kahrs, Nelson, Fanning & Hite, Wichita, Kan., Sonnenschein, Levinson, Carlin, Nath & Rosenthal and Frederic S. Lane, Chicago, Ill., for defendants.

WESLEY E. BROWN, District Judge.

This is a suit brought under Sections 4 and 16 of the Clayton Act, 15 U.S.C.A.

§§ 15, 26, alleging that defendants have violated Sections 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1, 2, and Section 2 of the Clayton Act, 15 U.S.C.A. § 13. Plaintiff is seeking to enjoin the alleged violations and to recover treble damages.

This matter is presently before the Court on defendant Interstate Vending Company's motion to quash service of summons and to dismiss. The motion attacks the jurisdiction and venue of this Court and the adequacy of the service of process made on defendant. For the reasons stated herein, the motion to quash service and to dismiss is denied.

It is noted that since commencement of the suit, Interstate Vending Company has changed its name to Interstate United Corporation. For convenience, the corporate defendants will hereinafter be referred to as follows:

| | |
|---|---|
| Interstate United (Vending) Co.: | "Interstate" |
| Interstate Vending Company of Wichita, Inc.: | "Interstate of Wichita" |
| Cigarette Service Company: | "Cigarette Service" |
| F. R. Solomon Vending Company: | "Solomon Vending" |

———◆———

Plaintiff's complaint was filed on December 23, 1963, and service was had on Interstate by personally serving F. R. Solomon in Wichita on December 30, 1963, the return of service stating that F. R. Solomon was serviced as "branch manager" of Interstate. On January 14, 1964 defendants were given ten additional days in which to plead, and on January 24, 1964, by agreement of counsel, defendants were granted an additional thirty days in which to answer the complaint.

On April 16, 1964, defendant Interstate filed its motion to quash and to dismiss in accordance with Fed.R.Civ.P. 12(b) (2), (3), and (5) for lack of jurisdiction, improper venue and insufficient service of process, asserting it is not an inhabitant of Kansas, is not found here and is not transacting business here. Interstate contends it is an Illinois corporation, not authorized to do business in Kansas, has no agent in the state, and asserts that F. R. Solomon is neither director, officer, employee nor agent of Interstate and is not authorized to accept service on Interstate's behalf.

An affidavit of Robert K. Deutsch, vice president of Interstate was filed along with the motion. Mr. Deutsch swore, inter alia, that Interstate is an Illinois corporation; that its only place of business is in Lincolnwood, Illinois; that it owns the stock of many subsidiaries including the other corporate defendants in this suit; that Interstate itself is not in the business of placing or maintaining vending machines, though its subsidiaries are; that Interstate is not qualified to do business in Kansas; that it has neither officer, agent, employee nor other person in the state authorized to receive service for it; that Interstate maintains no stock of merchandise, bank account, telephone listing or transfer agent in Kansas; that it neither owns nor leases real property in the state; that it does not place advertising or hold meetings of shareholders or directors in the state; and that F. R. Solomon is not a director, officer, employee or agent of Interstate and has never been authorized to accept service of summons for Interstate.

On May 21, 1964 plaintiff filed an affidavit of Mr. M. Y. Blum in opposition to Interstate's motion. The affidavit was also filed in another suit pending before this Court (Wichita Vending Company v. Interstate Vending Company, Civil Action No. W–3082). In this affidavit, Mr. Blum swore, inter alia, that he is a limited partner in Wichita Vending Company (plaintiff in W–3082); that he has sold cigarette vending machines to Interstate of Wichita for which machines he

received purchase orders and payment checks from Interstate (of Chicago); that he has had conversations with Mr. Shapiro from Interstate's Chicago office in which Mr. Shapiro indicated he was in Kansas to help solicit business for their local operation and that he had available unlimited capital to procure local business; that he had a conversation with Mr. White, district manager of Interstate (of Chicago) in which Mr. White asked for Mr. Blum's cooperation in Interstate's business operations in Wichita; that thereafter he was notified on various occasions by managers of Interstate's Wichita subsidiaries that before placing orders for machines, Mr. White's approval must be obtained; that in Chicago he was introduced to Mr. Wolf, president of Interstate, who stated to affiant that he would appreciate any help Blum could give to Interstate's people in Wichita; and that he has seen cigarette vending machines in Wichita bearing decals reading "Interstate Vending Company."

On June 3, 1964 Interstate filed an affidavit of F. R. Solomon in support of its motion in which Mr. Solomon swore, inter alia, that he is general manager of each of the Interstate subsidiaries in Wichita (i. e., Interstate of Wichita, Cigarette Service and Solomon Vending); that Interstate does not own any cigarette machines, service trucks or assets in Kansas used by the subsidiaries; that few, if any, machines in Sedgwick or Butler County, Kansas, bear a sticker referring to Interstate; that most of these stickers refer to Interstate of Wichita; that Interstate has no telephone number in Wichita; that the phone numbers for all of Interstate's Wichita subsidiaries are identical; that Interstate does not maintain any office in Kansas; that he is not an officer, director, employee or agent of Interstate and has never been authorized to receive summons for Interstate; that he does not conduct any business or render any services in behalf of Interstate in Kansas; that Interstate does not sell any products in the state; that the subsidiaries do not sell products manu-factured or otherwise sold by Interstate; that the products sold by the subsidiaries are purchased from suppliers and not from Interstate; that funds disbursed in Kansas by Interstate in the form of salaries or machine purchases or otherwise is done for interorganizational convenience and such sums are charged to the account of the subsidiary involved.

Plaintiff lays venue under 15 U.S.C.A. § 15 which states that suit may be brought "in any district court of the United States in the district in which the defendant resides or is found or has an agent, * * *." It is to be remembered that once defendant has challenged venue, the burden to establish same is on plaintiff. E. g., Wentling v. Popular Science Publishing Company, 176 F. Supp. 652 (M.D.Pa.1959).

Plaintiff does not mention 15 U.S.C.A. § 22, which gives the broadest jurisdictional base for antitrust suits against corporate defendants (suit may be brought "in any district wherein it may be found or transacts business; * *."). In Austad v. United States Steel Corp., 141 F.Supp. 437 (N.D.Calif. 1956), the Court remarked that jurisdiction is not to be determined by the niceties of pleadings and concluded that the congressional intent behind 15 U.S.C.A. § 22 "is not to be frustrated by any lack of artistry in plaintiff's pleading." Id. at 440. We need not reach such considerations in deciding the matter presently before us.

Nor do we reach the proposition solely relied on in Ross-Bart Port Theatre v. Eagle Lion Films, 140 F.Supp. 401 (E.D. Va.1954). In that case defendant's motion and affidavit re venue and jurisdiction did not deny allegations in the verified complaint as to the place of defendant's alleged misconduct. From this, the court inferentially concluded that defendant was admittedly present in the district and therefore suable in the district. Parenthetically, we note that the complaint at bar is not verified, though under Fed.R.Civ.P. 11, the signature of plaintiff's attorney certifies that to his belief "there is good ground to support it; * * *."

We feel the present matter can be equitably resolved within the framework of 15 U.S.C.A. § 15 pled and argued by both counsel.

■ At the outset, it should be noted that the separate entities of parent and subsidiary bodies corporate are usually entitled to be so treated. See, e. g., Austad v. United States Steel Corp., supra. But at the same time it must be recognized that where the facts warrant, it is within the court's power to pierce the corporate veil. See e. g., Bergold v. Commercial Nat'l Underwriters, Inc., 61 F. Supp. 639 (D.Kan.1945).

The initial part of the question presented by Interstate's motion, therefore, involves the issue of whether Interstate is "found" within the District of Kansas and is thereby amenable to suit here under 15 U.S.C.A. § 15.

■ The purpose of the venue section of the Clayton Act, 15 U.S.C.A. § 15 should be kept in mind. It was to "remove the existing limitations upon the venue of actions between diverse citizens and to permit the plaintiff to sue the defendant wherever he could catch him." Freeman v. Bee Mach. Co., 319 U.S. 448, 454, 63 S.Ct. 1146, 1149, 87 L.Ed. 1509, 1514 (1943), quoting L. Hand in Thorburn v. Gates, 225 F. 613, 615 (S.D.N.Y. 1915).

■ "Found," in the venue sense does not necessarily require physical presence. Freeman v. Bee Mach. Co., supra; Switzer Bros., Inc. v. Chicago Cardboard Co., 252 F.2d 407 (7th Cir. 1958). "Found" under 15 U.S.C.A. § 15 has been held to mean many things, but the better reasoned cases seem to equate it with somewhat of a "doing business" standard. (Cf. the discussion of "found" in United States v. Scophony Corp., 333 U. S. 795, 805, 68 S.Ct. 855, 92 L.Ed. 1091, 1099 (1948). The precise issue there involved 15 U.S.C.A. § 22.)

In the abstract, the "transacting of any business" under 15 U.S.C.A. § 22 can require something less than a "doing business" concept under the "found" provision of 15 U.S.C.A. § 15. But the concept of what constitutes the doing of business in a state by a foreign corporation has expanded greatly in recent years —both by legislation and by court decisions. Borderline cases must always be decided on their own peculiar sets of facts. "In this field, realism, not formalism, should be dominant; the problem must be solved in the light of commercial actuality, not in the aura of juristic semantics." Wentling v. Popular Science Publishing Co., 176 F.Supp. 652, 659 (M.D.Pa.1959).

As a consequence of these expanding jurisprudential concepts, " 'found' as used in 15 U.S.C.A. § 15 must now be considered in the light of the development of the law on what constitutes 'doing business', especially the development since International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, which has affected our approach to statutory as well as constitutional questions." American Football League v. National Football League, 27 F.R.D. 264, 267–268 (D.Md.1961). The trend since Shoe has been to evolve "doing business" to a standard of minimal contacts with the state to justify imposition of jurisdiction in light of traditional notions of fair play and substantial justice. Compare McGee v. International Life Ins. Co., 355 U.S. 220, 78 S. Ct. 199, 2 L.Ed.2d 223 (1957), with Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). As a practical result of this evolution, doing business as the standard of "found" in 15 U.S.C.A. § 15 is probably, as a matter of due process at least, roughly analogous to the "transacting of business" test of 15 U.S.C.A. § 22. Thus "transacting business" cases, while not controlling, become useful guidelines to the court in determining jurisdiction and venue under 15 U.S.C.A. § 15. That a court can reconstrue traditional "doing business" statutes to be coextensive with the limits of due process in light of Shoe, without any change in the jurisdictional "doing business" statutes, see Henry R. Jahn & Son., Inc. v. Superior Court, 49 Cal.2d 855, 323 P.2d 437 (1958).

In the instant case, Interstate argues, inter alia, that it is not qualified to do business in Kansas, that it has no office, no transfer agent, no bank account, and no telephone listing in the state, and that it neither owns nor leases real property in the state. "[S]uch a 'check list' is no longer a touchstone. * * * The nature of a defendant's business and the importance of its contacts with the state in which the suit is brought must be considered." American Football League v. National Football League, 27 F.R.D. 264, 268 (D.Md.1961). See also Riss & Co. v. Association of Western Rys., 159 F. Supp. 288, 291 (D.D.C.1958).

The nature of Interstate's business is not entirely clear. Its old name of "Interstate Vending" would indicate some connection with vending machine operations. Its present name of "Interstate United" does not disclose such a connection. But Mr. Deutsch, Vice President of Interstate, indicated in his affidavit that Interstate "owns the stock of a number of subsidiaries (including the other corporate defendants herein) which are engaged primarily in the business of selling" food products and cigarettes through vending machine operations. Mr. Deutsch maintains, however, that Interstate itself is not in the business of placing or operating vending machines. At any rate, it can be said that the nature of Interstate's business is vending operations at least to the extent of owning subsidiaries in various parts of the country which operate and maintain vending machines. At the same time it can be said that the nature of the business of Interstate's Wichita subsidiaries is placing and operating vending machines.

Most of the evidence concerning Interstate's contacts with Kansas is to be found in the three affidavits filed in support of and in opposition to Interstate's motion. Additionally, the Court has before it the unsigned deposition of Jameel Razook, an individual defendant herein, taken by plaintiff for discovery purposes. To the extent at least that the contents of the deposition are not materially inconsistent with other matters before this Court, such contents will be considered. Interstate's contacts with Kansas can be summarized as follows.

Interstate's general manager of the Wichita subsidiaries is F. R. Solomon (Solomon affidavit). It seems hard to believe that Interstate has no contacts with Kansas through its general manager of the local subsidiaries, yet Solomon himself swears he is neither employee nor agent of Interstate, and that he performs no work or services in Kansas for Interstate (Solomon affidavit).

Solomon stated that while Interstate owns no vending machines in Kansas, a few machines may bear stickers referring to Interstate Vending Company. And it is to be noted that Interstate of *Wichita* does not sell cigarettes at all (Razook deposition 78). Interstate disburses funds in the state in the form of salaries and machine purchases which Solomon states is done for "interorganizational convenience." Mr. Shapiro from Interstate's Illinois office has been in the state to help solicit business for the local operation and had capital available to procure local business in the form of new locations for machines (M. Y. Blum affidavit; Razook deposition 23, 52). Mr. Razook stated that Solomon received about $10,000.00 from Chicago for use in obtaining locations for machines, but does not know from whom the money came (Razook deposition 132). Mr. White, district manager of Interstate, talked with Mr. Blum in Wichita concerning the purchase of some machines and asked Blum for "Cooperation in connection with their business operations in Wichita." (Blum affidavit. And see Razook deposition 86). Subsidiary officials have indicated to Blum that machine purchases must be approved by Mr. White. Mr. Wolf, president of Interstate, told Blum in Chicago he would appreciate any help Blum could give his people in Wichita (Blum affidavit). Apparently all employees of the Wichita subsidiaries are paid by Interstate as an "interorganizational convenience."

Mr. Solomon stated that all cigarette machines in Sedgwick and Butler coun-

ties are serviced by employees of Solomon Vending or Cigarette Service, while Mr. Razook indicated that the service trucks used in Wichita bear the sign "Interstate Vending Company." (Razook deposition 149) Plaintiff contends that on p. 141 of the Wichita telephone directory in use in May of 1964 there was a listing for the "Interstate Vending Company, 251 East Grand, Chicago, Illinois." In the current phone directory effective June 1964 there appears no such listing, though there is on p. 140 a listing for the "Interstate United Corp. of Wichita, 710 West Douglas." Further, plaintiff contends the same directory listed both Cigarette Service and Solomon Vending as "Division of Interstate Vending Company." Again, the June 1964 directory carries no such listings, though the "Yellow Pages" carry Cigarette Service (p. 421) and Solomon Vending (p. 422) as "Division of Interstate United Corp. of Wichita". The status of "Interstate United Corp. of Wichita" listed in the June 1964 telephone directory is not entirely clear since F. R. Solomon in his affidavit dated June 2, 1964 describes the Wichita subsidiary in terms of "Interstate Vending Company of Wichita, Inc." Polk's 1964 Wichita City Directory at p. 685 lists Jameel Razook as assistant manager of "Interstate Vending." This is consistent with Razook's deposition in which he described his job as "assistant manager of the Wichita subsidiaries here in Wichita, of Interstate Vending." (Razook deposition 72)

In Wentling v. Popular Science Publishing Co., 176 F.Supp. 652 (M.D.Pa. 1959), defendant Lyman Gun Sight Corporation's only contacts with the forum district were these: less than 2% of its sales were in the district; it advertised in national magazines circulated in the district; its secretary made " 'good will calls' in this district." On the other hand, it had no agent in Pennsylvania to receive service and had no subsidiaries there; it had no office there nor owned any real estate in the district; it paid no rent there, had no tangible personalty there, had no phone listing there, no bank account there, none of its shareholders lived there and no meetings were held there. Yet the court held that "from the average business man's point of view" defendant was transacting business of a substantial character in the district.

In the same case, it was held that the National Rifle Association (NRA) was *not* transacting business of a substantial character as contemplated by the Clayton Act. The *only* contact NRA had with the forum district was the mailing into Pennsylvania of its monthly magazine. The Court emphasized that NRA is a non-profit, non-business, non-stock organization and is not qualified to do business in Pennsylvania or any other state. The dividing line for jurisdiction and venue lies somewhere between the two factual patterns.

Interstate relies heavily on Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925) for the proposition that a parent corporation is not amenable to suit in the federal courts of another state merely because it employs a subsidiary therein and controls said subsidiary commercially and economically. The question is whether Interstate by its contacts with the state and its subsidiaries here has transcended the reasonable limits for insulation under the shelter of Cudahy. We feel it has.

In Intermountain Ford Tractor Sales Co. v. Massey-Ferguson, Ltd., 210 F. Supp. 930 (D.Utah 1962), aff'd per curiam, 325 F.2d 713 (10th Cir. 1963), cert. denied, 377 U.S. 931, 84 S.Ct. 1334, 12 L.Ed.2d 296 (1964), a Canadian corporation was found to have transcended the limits for insulation by exerting control over American outlets through a "North American Operations" grouping. The Court penetrated the formal structure and held that the Canadian concern was "transacting business" in the forum district. The Court then continued with a scholarly analysis of many of the cases on which Interstate here relies in finding that the Canadian defendant was "found" in the district for service of process purposes. The Court's analysis in concluding that the Canadian concern was

"found" within the district is worthy of reproduction here:

"I think that my conclusion is not inconsistent with the principles * * that a corporation is not amenable to suit in a federal court of another state merely because it employs and controls a wholly owned subsidiary corporation as an instrumentality for doing business there (Cudahy) and that for a contrary result the local business of the foreign corporation must be of such character as to warrant the inference that the foreign corporation has subjected itself to the local jurisdiction and that it is by its duly authorized officers and agents present within the district where service is attempted (People's Tobacco Co. [People's Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587 (1918)]). I think that my conclusion is in harmony with recognized qualifications to these general rules because the existence of the local company 'as a distinct corporate entity' is not 'in all respects' or even in major respects, 'observed' (Cudahy); because in certain respects involving the control of local operations the American Company was in fact 'an "agent", "instrumentality" or "dummy" of the parent corporation' (Terry Carpenter, Limited [Terry Carpenter, Ltd. v. Ideal Cement Co., 117 F.Supp. 441 (D.Neb. 1954)]); because there was more than '[domination of] the operating domestic subsidiary through its stock ownership * * * and in that connection [more than mere] interorganizational activity by the parent corporation in respect of its operating subsidiary' (Nagl [Nagl v. Northam Warren Corp., 8 F.R.D. 130 (D.Neb.1948)]); and because far from being 'clear that the separate identities of parent and subsidiary had been carefully preserved', (Berkman [Berkman v. Ann Lewis Shops, 142 F.Supp. 417 (S.D.N.Y.1956)]) it appears as to certain local operations of the American company that there was such an intermixture of operational control apart from the regular channels of corporate management as to obscure, if not entirely obliterate, the separation of corporate identities." 210 F.Supp. at 938–939.

The court concluded that under the facts of the case "transacting business" and "doing business" were synonymous.

■ Much the same analysis here applies to Interstate and its Wichita subsidiaries. Checks for salaries and purchase of machines are drawn on Interstate; subsidiary officials must get approval from Interstate personnel before purchasing machines; Interstate personnel come to Wichita to give assistance on bookkeeping and accounting procedures; to aid in maintenance problems; to help solicit new locations for machines of the subsidiaries; Interstate has made available large sums of money to the subsidiaries to aid in such solicitation; F. R. Solomon is general manager for Interstate of the Wichita subsidiaries and Jameel Razook is apparently assistant to Solomon in this regard.

In short, the contacts of Interstate are too strong to be explained away as mere "interorganizational convenience." Many of the contacts or activities of Interstate in Kansas are the same activities on which plaintiff bases its antitrust allegation against Interstate. (See Yonce v. Miners Memorial Hospital Ass'n., 161 F.Supp. 178, 184 (W.D.Va. 1958.) Interstate exercised more than mere dominion of the Wichita subsidiaries through stock ownership and took part in more than mere interorganizational activities or conveniences with regard to the subsidiaries.

Interstate insists it is not in the business of placing and operating machines, yet it helps the subsidiaries in so placing machines and has made available large sums of money for the purpose. Interstate claims it has no agent or employee present in Kansas, yet F. R. Solomon swears he is general manager for Inter-

state of the Kansas Subsidiaries, albeit a general manager who performs no work or services for his superior Interstate. And Mr. Razook would appear to be Solomon's assistant with regard to the Wichita subsidiaries. The contacts and activities of Interstate in respect to the Wichita subsidiaries transcends the reasonable limits of and is inconsistent with a plea of insulation due to separate entities of parent and subsidiary.

The purpose of antitrust laws, in light of the trend to expand the concept of "doing business" has been stated thus: "A foreign corporation no longer [can] come to a district, perpetrate there the injuries outlawed, and then by retreating or even without retreating to its headquarters defeat or delay the retribution due." United States v. Scophony Corp., 333 U.S. 795, 808, 68 S.Ct. 855, 862, 92 L.Ed. 1091, 1101 (1948).

We therefore conclude that the contacts of Interstate with Kansas are of sufficient quality that, in terms of traditional notions of fair play and substantial justice, it can be said that Interstate is "found" within the district as contemplated by 15 U.S.C.A. § 15 interpreted in light of the Shoe evolution and the doing business concept. Therefore, the contacts of Interstate satisfy both a jurisdictional base and venue requirements under the Act. We so hold.

Interstate also urges insufficient service of process as a ground for its motion to quash service and to dismiss. Interstate's main contention in this regard is that F. R. Solomon through whom Interstate was served, is neither agent nor employee of Interstate nor is he authorized to accept service for Interstate.

Service of process and jurisdiction must be separated. Under the transient jurisdiction or physical power concepts of Pennoyer v. Neff, 95 U.S. 714, 24 L. Ed. 565 (1878), *service* in the state "gives" jurisdiction. The service of the writ was itself the jurisdictional base and also provided the due process notice required. But as acceptable jurisdictional bases expanded, courts began to realize that service of process was a sep-

arate concept serving a different function, *i. e,* due process *notice.* Cf. Milliken v. Meyer, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940).

Fed.R.Civ.P. 4(d) (3) states that service on a foreign corporation may be made "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process * * *." The purpose of the rule is to bring to the defendant notice of the action so that it has reasonable opportunity to appear and defend the suit. Service, therefore, should be made on a person who will know what to do with the papers. "[S]ervice is sufficient when made upon an individual who stands in such a position as to render it fair, reasonable and just to imply the authority on his part to receive service." American Football League v. National Football League, 27 F.R.D. 264, 269 (D.Md.1961). See also 2 Moore, Federal Practice ¶4.23 (2d ed. 1962).

This Court has held that service may be made on a foreign corporation through an agent not having actual authority to receive it. Bergold v. Commercial Nat'l Underwriters, Inc., 61 F.Supp. 639 (D. Kan.1945). The Court then indicated that "[t]he object of the service is attained when the agent served is of sufficient rank and character as to make it reasonably certain that the corporation will be notified of the service, * * *." Id. at 645.

F. R. Solomon has sworn that he is "general manager" for Interstate of its Wichita subsidiaries. Interstate insists that Mr. Solomon is not an agent or employee of Interstate, and indeed Solomon swears he performs no duties or services in Kansas for Interstate. Yet common sense requires us to conclude that a parent's general manager of local subsidiaries must by definition be of sufficient rank to insure that the parent will be notified of the service.

We hold therefore that as a matter of law, F. R. Solomon, as Interstate's gen-

-eral manager of the Wichita subsidiaries, is "an agent" through whom service on Interstate may be had. Solomon stands in such a position as to render it "fair, reasonable and just" to imply authority to receive service. To hold otherwise would be to completely ignore Mr. Solomon's admitted title of general manager.

In summary, we hold that defendant Interstate has sufficient contacts with Kansas so that it is "found" herein within 15 U.S.C.A. § 15 as to confer jurisdiction and venue on this Court. We further hold that F. R. Solomon, Interstate's general manager of the Wichita subsidiaries, is an "agent" of sufficient rank that service on Interstate may be had through him.

Counsel for plaintiff will prepare and submit an appropriate order.