**Shibo HAYASHI et al., Plaintiffs,**

v.

**SUNSHINE GARDEN PRODUCTS, INC., a California corporation, et al., Defendants.**

**No. 6484.**

United States District Court
W. D. Washington, N. D.

Feb. 15, 1967.

Affirmed 396 F.2d 13.

Ferguson & Burdell, Charles S. Burdell, Thomas J. Greenan, Seattle, Wash., for plaintiffs.

Bogle, Gates, Dobrin, Wakefield & Long, Robert W. Graham, Ronald T. Schaps, Peter D. Byrnes, Seattle, Wash., for defendant, Red Wing Peat Corp.

MEMORANDUM OPINION
FOLLOWING AND SUPPLEMENTAL
TO ORAL DECISION OF NOVEMBER
14, 1966

LINDBERG, Chief Judge.

This matter comes before the court on the motion of Red Wing Peat Corporation, a Texas corporation (herein called Red Wing) to dismiss this action as to it, or in lieu thereof to quash service of summons on it on the following grounds:

1. The court lacks jurisdiction over the person of this defendant;

2. Venue as to this defendant was improperly chosen because Red Wing does not reside in, is not found in, does not have an agent in, is not an inhabitant of, and does not transact business in the Western District of the State of Washington; and

3. Service of process on this defendant, which was procured on defendant in the State of Ohio, is insufficient.

The case is an antitrust action and the product involved is peat, which is used in gardening. The complaint alleges that

the several defendant corporations conspired to monopolize the sale and distribution of peat products in certain western states, including Washington. Most of the peat is produced in Canada and sold through distributorships so the product is therefore an object of interstate and foreign commerce.

Red Wing has its principal place of business in Sylvania, Ohio. It does not now nor has it ever engaged in business of any kind in the state of Washington and neither does it have any agents, employees, officers or directors in this state, according to the affidavit of its executive vice-president, Averill D. Trott. The sole basis for plaintiff's claim that Red Wing transacts business in the state of Washington is its complete ownership of the stock of its subsidiary, Western Peat Moss, Ltd., also a defendant in this action. Western Peat Moss, Ltd. is a Canadian corporation alleged to be doing business in this district by means of its participation in a complicated set-up involving various Canadian peat producers operating with and through Western Peat Moss, Ltd. to control the price of peat moss sold in the United States, and particularly in Washington in cooperation with the exclusive distributor of such peat moss, the California-based Sunshine Garden Products, Inc.

Red Wing contends that venue in this district is improper because Red Wing is neither "found" in this district, nor does it "transact business" in this district, nor does it have an agent in this district. Before process served on Red Wing outside of the state of Washington can be valid, venue must be properly established in the Western District of Washington. The plaintiff alleges that the defendant is present in this district because its wholly-owned subsidiary is present; and such wholly-owned subsidiary is in fact controlled and operated by its parent, Red Wing.

■ Once venue has been properly challenged, as it has been in this case with the affidavit of Mr. Trott, the burden is upon the plaintiff to prove proper venue pursuant to section 12 of the Clayton Act. Fooshee v. Interstate Vending Co., 234 F.Supp. 44 (D.Kan.1964); Wentling v. Popular Science Publishing Co., 176 F.Supp. 652 (D.Penn.1959).

Plaintiff has attempted to meet this burden by stating that Red Wing wholly owns Western Peat Moss, Ltd., and that the President of the subsidiary is also the President of Red Wing. In addition, Mr. John B. Fleming, who is listed as the Assistant Secretary-Treasurer and Director of Red Wing, appeared before the Tariff Commission in proceedings involving both Red Wing and Western Peat Moss, Ltd. This same Mr. Fleming was closely connected with the alleged set-up between the Canadian peat moss producers, through Canadian Peat Moss, Ltd., and Sunshine Garden Products, the exclusive distributor of Canadian Peat Moss in the western Washington area, by which set-up alleged violations of the antitrust laws occurred (John Bell deposition, pp. 23–25, 28–29). It is not apparent, however, that Mr. Fleming is associated with Western Peat Moss, Ltd. In effect, plaintiff argues that because of the complete ownership of the subsidiary by Red Wing, and because of the sharing of a common president as well as the involvement of Mr. Fleming with Western Peat Moss, Ltd. and his executive position with Red Wing, whatever benefits Western Peat Moss, Ltd. received through its operations in western Washington inured to the benefit of Red Wing.

Has a sufficient showing been made by plaintiff to satisfy the prerequisites for jurisdiction over Red Wing? Can it be said that because Red Wing wholly owns the subsidiary Western Peat Moss, Ltd. and shares the same officers, that the operations of Western Peat Moss, Ltd. are in fact the operations of Red Wing? Plaintiff contends that the deposition of Bell and the references to the Tariff Commission proceeding is enough to establish venue and cites Intermountain Ford Tractor Sales Co. v. Massey-Ferguson Limited, 210 F.Supp. 930 (D.Utah 1962), aff'd 325 F.2d 713 (10 Cir. 1963), cert. denied, 377 U.S. 931, 84 S.Ct. 1334,

12 L.Ed.2d 296 (1964). The plaintiff maintains that in the *Intermountain* case the court found the parent was transacting business through its subsidiary and thus was amenable to service of process within the state of Utah. However, the court there found that the parent actually controlled the subsidiary. There was evidence in *Intermountain* that the formal segregation of operations between the Canadian parent corporation and its American subsidiary had been overridden by a device (a council, "North American Operations") which the companies in common adopted in an effort to avoid the normal operational consequences and limitations of their separation.

The trial court in the *Intermountain* case noted the general rule that common officers and directors *ordinarily* may not be *enough* to demonstrate an unacceptable commingling, (210 F.Supp. 930, 937), and then went on to specify how the companies were in fact commingling operations. The court noted that by the device of "North American Operations" the common officers met together and decided upon common direction for all of the North American operations of the company, down to detailed instructions concerning the operations of company stores in the various states. Such specificity and detail of direction of the subsidiary by the parent is not present in the case now before this court.

■ The court in Terry Carpenter, Limited v. Ideal Cement Co., 117 F.Supp. 441 (D.Neb.1954) stated that the activities of its subsidiary cannot be held to be the activities of the parent corporation where the evidence only indicates the parent's ownership of the subsidiary's stock and interlocking directorates. Merely by showing this the plaintiff in *Terry Carpenter* did not set forth sufficient proof to subject the defendant to venue in the district. The plaintiff in this action has failed to show anything more than ownership of the subsidiary and the sharing of a common president. The *Terry Carpenter* case would seem directly applicable and Red Wing should be dismissed as a defendant. In sum, the plaintiff has not

shown that Western Peat Moss is in fact controlled and managed by Red Wing or is an agent of Red Wing doing business in this district, rather than a separate corporation carrying on its own activities.